# SUPREME COURT OF NEBRASKA

AT

## SEPTEMBER TERM, 1903.

---

PATRICK O'BRIEN v. STATE OF NEBRASKA.

FILED SEPTEMBER 17, 1903. No. 13,117.

1. **Conspiracy: PROOF.** A conspiracy, like any other fact which is the subject of judicial investigation, may be proved inferentially or by circumstantial evidence.

2. **Evidence.** The acts and declarations of a conspirator, during the pendency of the conspiracy, and in furtherance of the common purpose, are admissible in evidence against his associates.

3. **Conspiracy.** A conspiracy to steal and sell hogs for the benefit of all engaged in the illegal enterprise is pending until the sale has been made and proceeds divided.

4. **Order of Proof.** Before the acts and declarations of a conspirator are entitled to be considered as evidence against his associates, the conspiracy itself must be established, but the order of proof is a matter within the discretion of the trial court.

5. **Evidence.** The word "evidence," in its technical meaning and common acceptation, includes all the means by which any fact in dispute at a judicial trial is established or disproved.

6. **Instructions.** When the trial court gives an accurate, pertinent and intelligible instruction covering a particular point, it is not bound, at counsel's request, to give another instruction expressing the same idea in more perspicuous phrase.

7. **Evidence.** Evidence examined and found sufficient to sustain the verdict.

ERROR to the district court for Sarpy county: GUY R. C. READ, DISTRICT JUDGE. *Affirmed.*

*J. J. O'Connor, I. J. Dunn* and *Geo. W. Cooper,* for plaintiff in error.

*Frank N. Prout, Attorney General,* and *Norris Brown,* for the state.

SULLIVAN, C. J.

Frank Harrington, Frank Meister, John Hennessy and Patrick O'Brien were charged in the district court for Sarpy county with the larceny of six hogs of the value of $90. O'Brien was given a separate trial and was convicted. He claims a reversal of the sentence on the grounds: (1) That the evidence is insufficient to sustain the verdict; (2) that statements and declarations of his codefendants were received as evidence against him; (3) that the court erred in giving and refusing instructions. The main facts indicative of guilt which the evidence tends to prove are these: On August 12, the day before the theft of the hogs, four men with a team of horses and lumber wagon were seen idling near the farm of Adam Mohr, the complaining witness. One of them was O'Brien, another was Harrington; the other two have not been identified. These men when questioned as to their business said they were fishing in the Platte river, but they did not seem to have any fishing tackle or other usual equipment of the angler. One of them lay prone upon the ground and was apparently averse to showing his face. Late in the afternoon, perhaps about five o'clock, Harrington went over to the Mohr farm, but the real or pretended object of his visit is not disclosed by the record. That night the hogs were stolen. They were put into a lumber wagon and brought by Meister to the South Omaha market where they were sold about eight o'clock the next morning. Meister and Harrington were roommates. They had a room in the Aetna House in Omaha. In this room O'Brien was found, undressed and fast asleep, between three and four o'clock on the afternoon of August 13. There was hog manure upon his shoes

O'Brien v. State.

and hanging on the wall was a pair of wet and dirty over-
alls. When asked to account for his presence in the room,
he at first refused to do so, but afterwards said he had
been drunk the night before and that some one had brought
him up there and put him to bed. When O'Brien and
Meister were in jail together at Papillion, they considered
the advisability of admitting an acquaintance with Har-
rington in case he should be arrested, and concluded, on
account of some previous admissions, that it would be best
to own they knew him. The defense attempted to prove an
alibi. O'Brien, testifying in his own behalf, said that he
visited Avoca, Iowa, on August 12, and he did not return
to Omaha where he lived until after nine o'clock on the
evening of that day; that on the following morning he got
up early, ate breakfast and without any apparent provoca-
tion went out on a solitary spree. By noon he had taken
eight glasses of whiskey and considered himself drunk. He
then fell in with Harrington who took him to the room in
the Aetna House to sleep and sober up.

There was other direct and positive evidence tending to
sustain defendant's claim that he slept at his father's
house on the night of August 12, but we can not say upon
the whole record that the jury were not warranted in re-
jecting it. Although the evidence against defendant is
altogether circumstantial, we can not say that it is in-
sufficient.

It is alleged as error that the court received, as evidence
of defendant's guilt, acts and declarations of both Har-
rington and Meister. We think there is no just ground
for this complaint. Meister said to Williams, the person
to whom he sold the hogs, that he had raised them at Elk-
horn, but this statement was open to no valid objection.
It was part of the *res gestæ;* it was designed to lull sus-
picion and facilitate the sale and was, therefore, imputable
to all who were concerned in the theft. The conspiracy,
if there was one, was still pending; it embraced not only
the larceny of the hogs, but the disposition of them in the
market and the division of the proceeds. What Meister

said to Williams being clearly in furtherance of the common design and purpose, all who were to profit by it must be held to have assented to it. *Stratton v. Oldfield,* 41 Neb. 702; *Lamb v. State, ante,* p. 212; *Baker v. State,* 80 Wis. 416; 4 Am. & Eng. Ency. Law (2d ed.), sec. 3, p. 631; 3 Greenleaf, Evidence (16th ed.), sec. 94. These remarks apply also to other objections made by counsel for defendant on the theory that the acts and declarations of the alleged conspirators, which were given in evidence, did not form part of the *res gestæ.* It is conceded, of course, that the acts and declarations of one conspirator are not evidence against another, unless the conspiracy itself is established; but in this case there were facts and circumstances sufficiently proved from which a conspiracy might well be inferred.

The sixth paragraph of the court's charge was excepted to, but we think it unobjectionable. It is an intelligible and entirely accurate statement of the rule that, when a conspiracy has been proved, what each of the conspirators did or said in furtherance of the joint enterprise is admissible in evidence against his associates. The rule might, certainly, have been stated with greater precision, but the meaning of the instruction, whether read closely or hastily, is, in our opinion, unmistakable.

The thirteenth paragraph of the charge is said to be defective because, in it, the jury were told that a reasonable doubt "is one arising from the candid and impartial investigation of all the evidence in the case, or such doubt of the defendant's guilt as may exist in your minds because of a want of sufficient evidence to convince you of the defendant's guilt." Counsel say the jury should have been directed to take into account circumstances as well as evidence. We think the instruction correct and the criticism without merit. Evidence, as defined by lexicographers and law writers, includes all the means by which, in a judicial trial, it is sought to establish or disprove any material allegation of a civil or criminal pleading. Any circumstance which affords an inference as to whether the

matter alleged is true or false is, therefore, evidence and is commonly understood to be within the meaning of that term. *Lamb v. State, ante,* p. 212; 1 Greenleaf, Evidence (16th ed.), sec. 1; Thayer, Cases on Evidence, p. 2; 1 Jones, Evidence, sec. 3.

In the eighth paragraph of the charge the court told the jury that circumstantial evidence to warrant a conviction must exclude every reasonable hypothesis except the one implying defendant's guilt, and that incriminating circumstances not proved beyond a reasonable doubt were not entitled to any weight or influence. It is not claimed that this statement of the rule is inaccurate, but it is said to be, on account of the language used, beyond the comprehension of the average juror, and that the court erred in refusing to give the same thought in an instruction drawn by counsel for defendant and couched in plainer words. We are inclined to prefer the instruction drawn by counsel to the one given by the court, but there does not seem to be any great difference in their intelligibility. The meaning of each is, it seems to us, within the grasp and reach of ordinary men.

The judgment is

AFFIRMED.