WILLIAM D. JORDAN V. STATE OF NEBRASKA.

FILED JULY 3, 1917. No. 19655.

1. **Criminal Law: JURY: SUMMONING BYSTANDERS: FAILURE TO OBJECT.**
When upon the trial of a felony case the jury panel is exhausted and the court directs the sheriff, or coroner, "to summon from any of the bystanders so many good and lawful men as necessary to complete the same," objection to such order and to a juror so drawn not having been made until after verdict, it will be held error without prejudice.

2. ———: **EXCLUSION OF WITNESSES.** When the sheriff is a witness for the state, it is not ordinarily error for the court to refuse to exclude him from the courtroom during the examination of other witnesses.

3. ———:. **WITNESSES: LEADING QUESTIONS.** The manner in which a witness shall be examined is a matter over which the trial court has a large discretion, but leading questions, which suggest to the witness the answer desired, should not ordinarily be allowed. If, however, it appears that the questions and answers were not of such a nature as to prejudice the defendant, the error will not require a reversal.

4. **Instruction** set out in the opinion *held* free from error of which defendant may complain.

5. **Criminal Law: ARGUMENT.** A prosecuting attorney ought not to appeal to the prejudice of a jury, or ask that they return a ver-

dict in response to public sentiment, but, upon the record in the instant case, the address of the county attorney is not so prejudicial as to require a reversal of the judgment.

ERROR to the district court for Scott's Bluff county: RALPH W. HOBART, JUDGE. *Affirmed.*

*L. W. Colby,* for plaintiff in error.

*Willis E. Reed, Attorney General,* and *Charles S. Roe, contra.*

MORRISSEY, C. J.

Defendant was convicted in the district court for Scott's Bluff county of murder in the first degree. A sentence of life imprisonment was imposed, and he brings the case here on error proceedings.

At the request of the county attorney, another member of the Scott's Bluff county bar was appointed to assist in conducting the prosecution. Counsel for defendant filed objections to this appointment. The objections were overruled, and are urged again here. These objections were based upon the allegations that this attorney had appeared for the heirs of the deceased, other than the widow, in the matter of the probate of the estate of the deceased, and was therefore disqualified under section 5601, Rev. St. 1913. The testimony taken on the hearing of these objections is preserved in the bill of exceptions. It shows that, during the lifetime of the deceased, the attorney had represented deceased on one or two occasions; and that immediately following the homicide he, together with other citizens, went to the scene of the tragedy and made such investigation as any public-spirited citizen might make under the circumstances. Soon thereafter, at the request of a sister of the deceased, he prepared a petition for her appointment as administratrix of the deceased's estate, and this was filed in the county court. Before a hearing was had on the petition, the county attorney requested him to assist in the prosecution. He thereupon filed a withdrawal of his appearance in the county court, and was not

thereafter interested in the estate proceedings. He testified that no agreement had been made with him by any of deceased's heirs as to attorney's fees in the estate matter; that he never was paid for preparing the petition, and expected no pay therefor. It is also shown that he had no private employment from any of the deceased's family; that his employment came solely through the county attorney; and that he was not interested in any litigation based upon the same state of facts upon which the prosecution was based. On this showing the district court did not err in overruling the objections.

Counsel for defendant also complain that they were denied an opportunity to interview witnesses who had been subpoenaed by the state. The court gave them a hearing upon that complaint, and made an order permitting them to interview the state's witnesses, leaving it optional, however, with the witnesses whether they should submit to such an interview. The order made by the court fully protected the defendant in any rights he had, and he is in no position to complain of the ruling of the court thereon.

Early in the trial defendant filed an objection to the sheriff acting in his official capacity, alleging that he was prejudiced against the defendant. Later, however, defendant undertook to withdraw his objection, but by the permission of the court the coroner proceeded to exercise the functions of the sheriff, and the clerk thereafter issued an alias venire for jurors, and the same was served on the coroner's deputy or agent without objection from the defendant. The examination of jurors proceeded until the state had exhausted or waived its peremptory challenges, and the defendant exercised his last peremptory challenge, and, the jury being still incomplete, the court ordered the coroner "to summon from any of the bystanders so many good and lawful men as necessary to complete the same," whereupon a bystander was called, examined, passed for cause, sworn as a juror, and sat upon the trial of the case. It is now urged that the order of the court to the coroner is absolutely void, and that the person so summoned was

incompetent and disqualified to serve upon the jury. This contention is based upon the language of section 8143, Rev. St. 1913, wherein it is provided that, under such circumstances as existed at the time, the court may order the sheriff or coroner "to summon without delay good and lawful men, having the qualifications of jurors." It is said that the order made was erroneous because it directed the coroner to summon jurors from "the bystanders." The statute does not forbid the selection of bystanders, nor does it say that they shall be selected from the body of the county, but merely provides that those selected shall have the qualifications of jurors. Defendant made no objection at the time, nor is any complaint made against the character or conduct of the juror so summoned. While perhaps the order ought to have been in the language of the statute, no objection was made at the time and no prejudice is shown. In the absence of such showing, it will be treated as error without prejudice.

Defendant requested that witnesses for the state be excluded from the courtroom during the trial. This request was granted, with the exception of the sheriff, who was a witness. As to him the court refused the request unless defendant file an affidavit of prejudice. This was not done, and the court, in the exercise of sound legal discretion, refused to exclude him; he being an officer of the court. This was not an abuse of discretion.

It is also urged that the county attorney, in his opening statement of the case to the jury, made remarks which were not sustained by the evidence introduced on the trial and were prejudicial to the defendant. A number of immaterial matters were mentioned on which evidence was not offered, or, if offered, was excluded, but we find no misstatements of a prejudicial nature. The excerpts quoted in defendant's brief do not contain any matter that would tend to unduly prejudice the jury against the defendant. For the most part the statement merely pointed out what the county attorney expected to dev' op by the evidence, except that now and then he may have become argumentative.

This would have been more proper after the evidence had been introduced, but we find nothing that could have worked to defendant's serious disadvantage. As to that part which is most objectionable, no objection was made by defendant's counsel, nor was the court's attention called thereto.

Error is assigned because the court permitted counsel for the state to ask a number of leading questions. It is probably true that from time to time in making up this record of more than 1,000 pages there are some questions in such form as to suggest an affirmative answer. However, after a consideration of the questions to which our attention is directed by defendant's brief, we are of the opinion that the trial court was not guilty of an abuse of discretion in allowing the questions to be asked and answered. The manner in which the witnesses shall be examined is a matter over which the trial court has a very large discretion. *Edwards v. State,* 69 Neb. 386. But as to matters material to the issues, this method of examination ought to be carefully guarded against, and under some circumstances would be so prejudicial as to require a reversal.

It is also urged that witnesses were permitted to testify "to seeing footprints made by defendant on the soft, smooth ground the next morning, and to compare them with the tracks on the west side of the house supposed to have been made by the man who fired the fatal shot through the window, and to give the result of his opinion or comparison of such tracks to the jury." It is true that some of these questions, if singled out and taken alone, may be criticized, but, when the whole testimony is examined, and the description of defendant's shoes and the points on which the witnesses based their opinions are brought out fully, as they were before the jury, we can find no substantial error in the rulings of the court on the admissions of this testimony.

While defendant assigns as error the refusal of the court to give a number of requested instructions, he especially complains because his requested instruction No. 7

was not given.   This instruction was given in substance by the court on its own motion, and therefore its refusal was not error.

While exceptions were taken to each of the instructions given by the court on its own motion, instruction No. 20 is the only one of which special criticism is made.   It reads:

"Certain officers of the county of Scott's Bluff and other places have testified in this case on behalf of the state. You are instructed that under the law of this state, in weighing their testimony, greater care should be used, because of the natural and unavoidable tendency of such persons in procuring and stating evidence against the accused.   But it does not follow that you are necessarily obliged to disregard their testimony."

Complaint is made of the concluding sentence.   With the exception of this sentence, the instruction has heretofore been approved.   *Preuit v. People,* 5 Neb. 377; *Kastner v. State,* 58 Neb. 767; *Shellenberger v. State,* 97 Neb. 498.   In a discussion of the rule, in *Shellenberger v. State, supra,* it is said:

"Instructions of this nature are countenanced by the courts in behalf of a defendant, in order to call attention of the jury to the fact that the hunting instinct still exists, and that men whose duty it is to prosecute criminals sometimes allow their zeal, perhaps unconsciously, to color or bias their testimony in the endeavor to procure conviction.   This is the only reason why such instructions are permitted."   The clause of which complaint is made does not go too far in telling the jury that they are not necessarily bound to disregard the testimony of the county officers.   Indeed, the instruction is too broad. It ought not to have been applied to the county officers generally.

The closing argument of the county attorney is criticized.   There are statements therein relating to the expense of the trial which might better have been omitted. Perhaps also the conclusion he drew from some of the evidence, or his recollection of some of the evidence, was some-

what faulty. His reference to the public interest in the verdict and his suggestion of the verdict expected may well be criticized. A prosecuting officer ought not to appeal to the prejudice of a jury, or ask that they return a verdict in response to public sentiment, but, upon the record before us, we do not feel called upon to hold that his remarks were so prejudicial as to require a reversal of the judgment.

The assignments have been considered in the order followed in defendant's brief, and the sole question remaining is the insufficiency of the evidence to sustain the verdict.

Joseph E. Layton was a well-to-do farmer, who, about a year before his death, had married defendant's daughter. In April, 1915, defendant and his wife came from their home in California and took up their abode with Mr. and Mrs. Layton. On the night of June 11, the family, which consisted of Layton and his wife, and his wife's three-year old child by a former marriage, the defendant and his wife, and a servant girl, had supper about 8 o'clock in the evening. The women cleared the table while Layton remained seated, reading a newspaper, as was his custom. Defendant was in and about the house. The women, having finished their work, were seated on one side of the table, which was in a room used both as a dining room and kitchen, while Layton was on the other side, immediately in front of a window, with a lighted lamp on the table, when a shot was fired through the window. The bullet passed through Layton's head, killing him instantly. The theory of the state was that Jordan went outside of the house, and with a rifle shot and killed Layton, the motive being to obtain possession of his property, either for himself or for his daughter, Mrs. Layton. No evidence was offered in behalf of defendant. It would serve no useful purpose to discuss the evidence at length. It points conclusively to defendant's guilt, and the judgment is

AFFIRMED.

HAMER, J., not sitting.