THOMAS MURRAY v. STATE OF NEBRASKA.

FILED OCTOBER 3, 1929. No. 26864.

Bertrand V. Tibbels and Eugene D. O'Sullivan, for plaintiff in error.

C. A. Sorensen, Attorney General, and Homer L. Kyle, contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD and EBERLY, JJ., and REDICK and STEWART, District Judges.

STEWART, District Judge.

In the district court for Otoe county, one Thomas Murray, hereafter called the defendant, was prosecuted on an information containing three counts. In the first count he is charged with unlawfully and feloniously forging a promissory note for $5,000, purporting to be signed by one Henry Kasbohm. The second count charged him with uttering such forged note with intent to defraud; while the third count charged him with wilfully and unlawfully hav-

ing such forged note in his possession for the purpose of selling and disposing of it with intent to defraud. The trial resulted in a verdict of guilty on all counts. After overruling the defendant's motion for a new trial, the court sentenced him to an indeterminate term of from five to ten years in the penitentiary on the first and second counts, and one to ten years on the third count, together with a fine of $100 and costs of prosecution, sentences to run concurrently.

In this case, the petition in error contains 43 assignments of alleged error. In defendant's printed brief, these are reduced to 12 in number, all of which are presented and argued in 10 propositions of law. Only those which are argued in brief of counsel will be considered.

The accused first contends that the trial court erred in overruling his plea in abatement, based upon the insufficiency of the preliminary hearing. More definitely stated, his complaint is that the evidence offered by the state at the preliminary examination was insufficient to warrant the order of commitment by which he was held for trial in the district court. What we conceive to be the correct rule by which to determine the sufficiency of the evidence to justify holding the accused to answer for a crime in the district court is clearly stated by Holcomb, J., in the case of *Jahnke v. State*, 68 Neb. 154.

"When the quantity or sufficiency of the evidence to justify the holding of a person to answer for a crime in the district court is called in question by a plea in abatement, and it appears that there has been a preliminary hearing in form and substance, and that evidence has been introduced in support of the complaint such as to invoke an honest exercise of judgment or discretion * * * as to the order or judgment to be entered, and from which a fair legal deduction may be reached that a crime has been committed, and there is testimony tending to show that the accused committed the offense, and he is held to await trial in the ment would be unavailing."

district court, a preliminary examination has been had within the meaning of the statute, and the plea in abate-

In this case, the record shows that a preliminary hearing was had before the county judge, sitting as a committing magistrate. The state relied upon the testimony of two witnesses. Kasbohm, whose purported signature appeared on the promissory note in question, testified that it was not his signature and that he never authorized it. This was the appropriate proof of forgery, and, in the absence of countervailing evidence, was sufficient to establish the crime of forgery. The state then called the witness Robert O. Marnell, who testified that he was the cashier of the Merchants National Bank of Nebraska City to whom the alleged note was drawn; that he knew the defendant; had transacted business with him and with his bank, and that he knew the handwriting of the defendant. He further testified that he received the note in question and that it was accompanied by a letter in the handwriting of the defendant. It is true, as argued by counsel, that the letter of transmittal was not signed by the defendant and, in fact, was a printed form of transmittal slip evidently used by the defendant's bank for the transmitting of various items of exchange. However, this slip did contain certain written names and figures and these, no doubt, were the indications upon which the witness based his opinion that the handwriting was that of the defendant. The defendant offered no testimony. Thus, it appeared from the record before the magistrate that a forgery had been committed and that the forged instrument was in the possession of the defendant, unexplained. Here was the time and place for the defendant to speak, if by any explanation he could destroy the damaging inferences arising from the state's evidence. The hearing was for his benefit. We conclude that the evidence offered by the state at the preliminary examination in this case meets all the requirements of the rule announced in the *Jahnke* case; that it fully justified the order of commitment by which the defendant was required to answer the charge of forgery in the district court, and that his plea in abatement was properly overruled by the trial court.

It is next urged that the trial court erred in overruling defendant's challenge to the second array of jurors, based upon the fact that the panel was selected and summoned by one Carl Ryder, sheriff of Otoe county, who, it is claimed, was a material witness for the state and prejudiced against the defendant. The record shows that the sheriff was never called as a witness in this case. The county attorney, in his testimony, says that the name of the sheriff was indorsed on the information in pursuance of a custom established by his office, whereby the names of various court officials were indorsed in every prosecution as a precautionary measure; that the sheriff was not a material witness for the state and that he never had any intention of calling him. Upon motion of the county attorney, the name of the sheriff was ordered stricken from the information. No evidence appears in the record which in any way supports the charge that the sheriff bore any malice toward the defendant, or that he was guilty of any misconduct in his relations with the jury at any time. The laws of this state have imposed upon the sheriff certain duties, among which are the selection and summoning of juries, as well as guarding them during the trial and subsequent deliberations. In the absence of any showing of actual misconduct, or conduct inconsistent with his official duties, it will not be presumed that he had any such personal or private interest in the prosecution as would disqualify him from acting officially in the performance of all duties specifically enjoined upon him by the statute. Very recently this court considered the subject in the case of *Noonan v. State*, 117 Neb. 520. In this case, Judge Eberly, speaking for the court, announced the following rule:

"A sheriff who is not the prosecuting witness nor the sole witness in a criminal case, but whose evidence is affirmatively shown by the record to be corroborative merely, is not, by the fact that he is called as a witness and his name, as such, is indorsed upon the information charging the offense being tried, disqualified thereby from performing the duties of his office; nor do these facts render a panel

of jurors selected and summoned by him, under direction of the district court as provided by section 9078, Comp. St. 1922, vulnerable to challenge."

We find no error in the overruling of the defendant's challenge to the second array of jurors.

Further, objection is made by the defendant to the court's ruling on certain evidence offered through the witnesses Kasbohm and Shane. We shall first consider the testimony of the witness Kasbohm.

Exhibit No. 66 was a letter written by the defendant to his cousin on March 24, 1927, containing a list of what purported to be accommodation notes, including the note which is the basis of this prosecution. Included in this list are two other notes, each for $5,000, said by Murray to have been signed by Kasbohm. Over objection of the defendant, the witness was permitted to testify that he never signed nor authorized the signing of any note such as the three referred to in this exhibit. It is insisted that this ruling resulted in the admission of evidence tending to establish one crime in the prosecution of another.

The defendant, by his plea of not guilty, put in issue everything which it was incumbent upon the state to prove under the information filed in this case. Guilty knowledge and intent were elements of the offense charged. It is in proof of these facts that the courts have gone farthest in admitting facts apparently collateral to the issue. Frequently motive and intent can be proved in no other way. The state in this case, by showing the note in the possession of the defendant, together with evidence that it was a forgery, presented some proof from which intent and guilty knowledge on the part of the defendant might rationally have been inferred. We know of no rule of law which precludes the state from offering additional competent corroborative proof. The single circumstance of defendant's possession of such an instrument might possibly leave in doubt the secret intent and motive of the defendant. When viewed in connection with the other evidence disclosed by exhibit No. 66, and it was made to appear that at about the

same time the defendant had in his possession two other notes by the same man and the genuineness of which was being denied, it might well be said that the evidence objected to by the defendant was the most appropriate kind of proof and effectually removed all doubt and uncertainty as to the true intent of the defendant in the transaction relating to the note in question. When it becomes necessary in a criminal prosecution to show a particular intent to establish the offense charged, proof of other acts of the same or similar kind is admissible for that purpose, when such proof shows such connection between the different transactions, in point of fact and time, as raises a fair inference of a common motive in each. To be admissible, such proof should be sufficiently significant in character and sufficiently near in point of time to have a tendency to persuade a reasonable man to belief in the intent or motive sought to be proved.

Further complaint is made that the court, over objection of the defendant, permitted the witness Shane to give his opinion regarding the authorship of the note in question. The witness was offered by the state as an expert on handwriting. The defendant insists that he was not properly qualified as an expert and devotes much time to criticism of his testimony. The question of the qualification of an expert offered in court as a witness is a preliminary one for the court to determine. The weight to be given his testimony is a question for the jury, under proper instructions by the court. The trial court was evidently satisfied with the foundation for this testimony, and it is the prevailing rule that the decision of the trial court on the question of the qualification of an expert witness will not be disturbed by the reviewing court unless there has been a clear abuse of discretion. We find no such abuse of discretion in the instant case. Counsel for defendant in their brief have said much about the method by which this witness reached his final conclusions. This was a matter affording proper subject for cross-examination of the witness, but went only to his credibility and the weight to be given to his testimony.

The next assignment of error relates to instruction No. 11, given by the court on its own motion, which is as follows:

"You are instructed that the defendant has not testified in his own behalf in this case, as he had a lawful right to do. Nothing must be taken against him because he has not so testified."

This identical instruction has been considered by this court in the case of *Ferguson v. State,* 52 Neb. 432, and it was there held that the giving of such an instruction is not reversible error. Defendant points out that this instruction violates section 10139, Comp. St. 1922. This statute was given full consideration by this court in the case last above referred to and we are heartily in accord with the views there expressed. The instruction given by the court in this case was a cautionary instruction given for the benefit of the defendant and designed to prevent the jury from indulging any inferences prejudicial to him from the fact that he did not give testimony in his own behalf. If there is any real ambiguity in the first sentence of the instruction, the last certainly removes all uncertainty as to the meaning the court conveyed to the jury. It may further be said that, if the defendant was not satisfied with the form or substance of this instruction, another should have been tendered the trial court as a requested instruction. We see no merit in this objection.

The next assignment of error presented by this appeal relates to the manner in which the jury were guarded in the closing hours of the trial, after the case had been finally submitted to them. Defendant complains that, after the jury retired to deliberate, they were not kept together as the law requires, but were permitted to separate in different rooms at the hotel on the last night before the verdict was returned. It is pointed out that, under the decisions in this state, a presumption of prejudice arises by reason of a separation of the jury, and that the state in this case has failed to present sufficient competent proof to establish the purity of the verdict. It appears from the record that the

jury were permitted to occupy separate rooms at the hotel during at least the last night of their deliberation. Evidence as to what actually occurred was offered and considered by the trial court on the hearing of the motion for a new trial and is preserved in the bill of exceptions. We have examined all this evidence with great care and we fail to find the testimony of a single witness which even tends to support any charge that any member of the jury at any time was in contact with any improper influence of any kind. Affirmative proof was offered by the state that nothing improper took place during the separation; that at no time was the jury subjected to any outside influence, and that the verdict was arrived at upon the consideration of the evidence only, and that no fact other than such as were adduced at the trial was considered by the jury. This proof was furnished in the form of affidavits by nine of the jurors who participated in the verdict. It is insisted by the defendant's counsel that these facts were not satisfactorily established by this showing. Under the rule established in this state, these are matters resting in the sound discretion of the trial court. Upon all the evidence submitted at the hearing on the motion for a new trial, the court below failed to find sufficient evidence of misconduct or prejudice to warrant the granting of a new trial, and in this finding we fully concur. In an opinion written by Judge Good in the case of *Simmons v. State*, 111 Neb. 644, this court has announced the following rule:

"Whether a motion for a new trial in a criminal case, based on alleged misconduct of jurors, should be sustained rests in the sound discretion of the trial court, and its ruling on such motion will not be disturbed unless an abuse of discretion is shown."

By appropriate assignment of error, the defendant finally presents to this court the question of the sufficiency of the evidence to sustain this conviction. Viewing the testimony as a whole, we find it sufficient in every way to establish the guilt of the defendant beyond a reasonable doubt. In fact, the verdict of the jury in this case is the only verdict which

should have been returned on the evidence submitted. It is true that the state has relied to some extent upon circumstantial evidence in the proof of material facts necessary to sustain a conviction, but in every such instance the facts and circumstances tending to connect the accused with the crime charged are of such persuasive nature as to exclude, to a moral certainty, every hypothesis except that of his guilt. Reference has already been made to the testimony of the witnesses Kasbohm, Marnell, and Shane. The legal deductions warranted by this proof are too apparent to require extended discussion here. However, other facts and circumstances disclosed by the record point with unerring certainty to the defendant as the perpetrator of this crime. We shall make brief reference to some of these. It appears from the evidence that the defendant for a number of years was the president of the Dunbar State Bank and in active charge of its affairs, and that the complaining witness, Kasbohm, was a near-by farmer and customer of this bank; that for at least a year prior to the time this offense was committed his bank was in serious financial difficulty, and about March 14, 1927, he disappeared and was next heard from at Corpus Christi, Texas. From that point he wrote a letter to his cousin, living at or near Dunbar, under date March 24, 1927. It is hard to conceive of a letter more incriminating in its nature, when considered in its natural and proper relation to other facts established in this prosecution. The letter is too long to warrant its full reproduction here, but we feel that specific reference to certain parts of it is entirely justified and wholly pertinent. In this letter, the defendant gives his cousin a list of what he calls accommodation notes, among which are three notes of $5,000 each, purporting to be signed by Kasbohm. With reference to these he writes to his cousin as follows:

"I had to get this money to keep things going and if there is any way at all that you can get the two due this month renewed without letting Kasbohm or J. P. Baker know, wish you would. You will find the amount of the Kasbohm notes to my credit as Special and Trustee $10,000 and

$5,000. The others have the excess loans, etc., to take care of them."

Other important statements appearing in the letter follow:

"You will find everything in my box in an envelope addressed to you—which will explain everything. Believe if you could get Henry & Earl to put enough money into the bank to pay for my stock you could continue to charge off those from loans that we don't expect to get anything out of. Hope you can arrange it some way so you can continue. I have worried my head off for more than a year but looks like no other recourse now. Wish you would try and keep this to yourself as much as possible and see if you cannot arrange things so that the bank can run. I expect to go south somewhere for the present but some time you may hear from me. God knows how I have prayed that this might be averted but seems to no avail. As for my family it is worst of all but you can help Lou to dispose of the home and advise her to go out to her Uncle Jno. Barsley in Wash. as she has so often said she would like to go there. I don't remember anything else now but if I should will write you again. Try and keep this all to yourself if possible. I am going to say farewell wish you success. Don't know how far I will go south as I don't have much money, but am going to strike a job at something. I am lost for the present and keep it to yourself."

This letter was signed "Your Cousin Tom" and contains other statements fully as significant as those quoted. It will be remembered that Kasbohm in his testimony denied ever signing or authorizing any note such as those referred to in this letter, and an audit by an examiner for the guaranty fund commission reveals that the note register of the Dunbar State Bank shows no loan of $5,000 to Kasbohm and contains no record of any such note. The records of that bank do show that the defendant's bank received a credit from the Merchants National Bank of $5,000 on the alleged forged note.

To us, further discussion of the evidence in this case

seems unnecessary. The verdict of the jury is fully sustained by the evidence, and the trial court properly overruled defendant's motion for a new trial on this ground.

On a careful examination of the entire record in this case, we find no error prejudicial to the substantial rights of the defendant, and the judgment of conviction is accordingly

AFFIRMED.