STATE OF NEBRASKA, APPELLEE, v. ERNEST A. ADAMS, APPELLANT.

147 N. W. 2d 144

Filed December 16, 1966. No. 36307.

Thomas P. Kelley, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, BROWER, and McCOWN, JJ., and MANASIL and HASTINGS, District Judges.

BOSLAUGH, J.

The defendant, Ernest A. Adams, was convicted of soliciting, proposing, or agreeing to receive a bribe in violation of section 28-708, R. R. S. 1943. His motion for new trial was overruled and he has appealed.

This case arose out of an application to rezone a tract of land at Eighty-first Street and Farnam Drive in

Omaha, Nebraska. The application was first presented to the planning board and then submitted to the city council. The defendant was a member of the city council and voted for the rezoning. The State's theory of the case is that the defendant, in conspiracy with others, solicited, proposed, and agreed to receive a bribe in the amount of $5,000 for a favorable vote on the rezoning application.

The defendant, who was charged by indictment, filed a lengthy plea in abatement attacking the indictment and the proceedings of the grand jury. The trial court sustained a demurrer to the plea in abatement. The defendant contends that the demurrer should have been overruled because the plea in abatement alleges that members of the negro race were excluded from service on the grand jury; that six of the grand jurors had signed recall petitions against mayor James J. Dworak; and that one grand juror had answered a questionnaire by stating: "Made up my mind from newspapers."

The demurrer to the plea in abatement was properly sustained. The defendant does not claim intentional or systematic discrimination or exclusion of the members of his race from the grand jury. See 24 Am. Jur., Grand Jury, § 27, p. 851. In this state the only objection to the grand jury which can be made by a plea in abatement is to show that the jurors lacked the positive qualifications demanded by law. Krause v. State, 88 Neb. 473, 129 N. W. 1020, Ann. Cas. 1912B 736.

The defendant contends that the statute under which he was charged is so vague and indefinite that it is invalid. Section 28-708, R. R. S. 1943, provides: "Whoever offers or attempts to bribe a public officer and every public officer who solicits a bribe or proposes or agrees to receive a bribe in any case shall be fined in a sum not exceeding five hundred dollars nor less than three hundred dollars, and shall be imprisoned in the Nebraska Penal and Correctional Complex for the period of one year."

We think the meaning of the statute is clear and definite. The Legislature has provided that the attempted bribery of a public officer or the solicitation or agreement to receive a bribe by a public officer shall be a felony. McMartin v. State, 95 Neb. 292, 145 N. W. 695.

The defendant points out that other sections relate to specified circumstances under which attempted bribery or the solicitation of a bribe is only a misdemeanor. These sections do not have the effect of making section 28-708, R. R. S. 1943, vague and indefinite even though it may be possible that a particular act may be punishable under more than one section of the law.

The indictment against the defendant originally contained three counts. The first count charged that from June 3, 1964, to September 28, 1964, the defendant as a city councilman conspired with Ronald J. Abboud, Carville R. Buttner, and Steve Novak to accept a bribe for a favorable vote on a rezoning matter. The second count charged that the defendant, as a member of the city council, received $5,000 on September 15, 1964, for a favorable vote on a rezoning matter. A demurrer to these counts was sustained.

The third count, upon which the defendant was convicted, charged that the defendant, from June 3, 1964, to September 28, 1964, "* * * being a City Councilman of the City of Omaha, Nebraska, did unlawfully solicit, propose, or agree to receive a bribe, to-wit: the sum of $5,000.00 from John B. Coleman * * *." The defendant contends that the demurrer to this count should have been sustained because it did not allege in sufficient detail the circumstances of the crime charged.

An information or indictment must inform the accused, with reasonable certainty, of the charge being made against him in order that he may prepare his defense thereto and also be able to plead the judgment rendered thereon as a bar to later prosecution for the same offense. State v. Buttner, 180 Neb. 529, 143 N. W. 2d 907. But it is generally sufficient to allege the crime

in the language of the statute. Sedlacek v. State, 147 Neb. 834, 25 N. W. 2d 533, 169 A. L. R. 868. It is not necessary to state the detailed particulars of the crime in the meticulous manner prescribed by the common law. Cowan v. State, 140 Neb. 837, 2 N. W. 2d 111.

An indictment or information alone need not be full protection against double jeopardy because a defendant may allege and prove facts outside the record in support of a plea of former adjudication. Cowan v. State, *supra.* The remedy of a bill of particulars is available to assist a defendant in preparing his defense and to protect him against a second prosecution for the same offense. Myers v. United States, 15 F. 2d 977.

In this case Count III of the indictment was in the language of the statute and identified the person solicited, proposed, or agreed with. The particular transaction was alleged in greater detail in the first two counts; and although these counts were dismissed, they did serve some purpose in advising the defendant as to the nature of the charge against him. See Bartley v. State, 53 Neb. 310, 73 N. W. 744. There was no defect or imperfection in Count III of the indictment which prejudiced the substantial rights of the defendant upon the merits. § 29-1501, R. R. S. 1943. The demurrer was properly overruled as to Count III.

Upon the motion of the State, the indictment against the defendant was consolidated for trial with indictments against Ronald J. Abboud and Stephen T. Novak. The defendant's later motion for a separate trial was overruled. The defendant contends Article I, section 6, of the Constitution of Nebraska, which provides that the "right of trial by jury shall remain inviolate" guarantees the right to a separate trial. The defendant's theory is that the 1957 amendment to section 29-2002, R. R. S. 1943, was ineffective because of this constitutional provision.

The constitutional provision was intended to preserve the right of trial by jury as it existed at common law

and under the statutes in force when the Constitution was adopted. State v. Hauser, 137 Neb. 138, 288 N. W. 518; Bell v. State, 104 Neb. 203, 176 N. W. 544. The former right to separate trials of defendants who were jointly indicted was statutory in origin. See G. S., § 465, p. 825. The right was not of common-law origin and was not guaranteed by the Constitution.

The right to a separate trial now depends upon a showing that prejudice will result from a joint trial. State v. Brown, 174 Neb. 387, 118 N. W. 2d 328; State v. Hall, 176 Neb. 295, 125 N. W. 2d 918. The defendant argues that he was prejudiced in this case because he was prevented from using the testimony of his codefendants. The defendant relies upon United States v. Echeles, 352 F. 2d 892, in support of this contention. In the Echeles case a codefendant had made prior statements to the effect that the defendant was blameless, and it was held that this circumstance required that a separate trial be granted. The record in this case does not show that the defendant would have been able to benefit from any testimony of his codefendants if his motion for a separate trial had been granted. The record does not show an abuse of discretion in refusing to grant the defendant's motion for a separate trial.

The principal witness for the State was John B. Coleman who wanted the property rezoned so that he could construct an apartment development on the site. Coleman testified at length concerning conversations with the defendant and other members of the conspiracy. Much of the evidence against the defendant Adams consisted of statements made to Coleman by other members of the conspiracy out of the presence of the defendant. The defendant contends that this evidence should not have been admitted because there was no independent evidence of the conspiracy.

Where there is proof of a conspiracy, the acts and declarations of a conspirator in furtherance of the conspiracy are the acts and declarations of all and may be

admitted in evidence against the other conspirators. Lamb v. State, 69 Neb. 212, 95 N. W. 1050. The fact of the conspiracy may be proved by circumstantial evidence and the order of proof is a matter within the discretion of the trial court. O'Brien v. State, 69 Neb. 691, 96 N. W. 649.

The record shows that the rezoning was approved by the city council on September 15, 1964. Coleman testified that the defendant and Ronald J. Abboud came to Coleman's hotel room that evening and that Abboud handed a piece of paper to the defendant which the jury could find was a check in the amount of $5,000 from Abboud to the defendant. The following day Coleman gave Abboud a check for $5,000 to reimburse him for the payment to the defendant.

Coleman further testified that the defendant returned to Coleman's hotel room on September 22, 1964, and complained that the $5,000 check from Abboud had been returned unpaid. This conversation took place in the presence of John W. Castle, a lawyer from Chicago, Illinois, employed by Coleman.

Castle identified exhibit 8 as being a photostatic copy of the check which Adams showed to Coleman and Castle at that time. The check was in the amount of $5,000, dated September 16, 1964, drawn on the account of Abboud Investment Company, Inc., and payable to Ernest A. Adams Real Estate Trust Acct. The check had been returned unpaid for the reason that it was drawn on uncollected funds. It was apparent from the conversation that the check from Abboud to Adams represented the payment that had been made by Coleman to Abboud for the benefit of Adams, but that Abboud had given Adams a bad check. Adams was complaining to Coleman about the Abboud check because it represented the payment from Coleman to Adams made through Abboud.

The evidence was sufficient for the jury to find that a conspiracy existed and that the defendant was a mem-

ber of it. The statements made by the other members of the conspiracy out of the presence of the defendant were admissible against him.

The evidence in this case, although largely circumstantial, was sufficient to permit the jury to find the defendant guilty. The jury was not required to accept the defendant's explanation concerning the $5,000 check he received from Abboud. It is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence. State v. Sheldon, 179 Neb. 377, 138 N. W. 2d 428.

During his testimony, Coleman was permitted to refer to a memorandum, exhibit 11, which had been prepared from notes made by the witness and one of his attorneys. The defendant contends that this was improper because the memorandum had been prepared in part from notes made by the attorney, and the testimony did not show when the notes were made.

Coleman testified at length in regard to transactions and conversations with a large number of persons which occurred over a period of about 6 months. He testified that the memorandum had been made under his supervision, that it was based on notes that he had made at the time the incident had occurred, and that after referring to the notes he had a present recollection of the events as they occurred. He referred to the memorandum for the purpose of refreshing his recollection as to dates and similar details.

The testimony of Coleman was based upon his independent recollection of the events referred to. Such a witness may use original memoranda or a copy prepared by himself or another to refresh his recollection. See, Anderson v. State, 150 Neb. 116, 33 N. W. 2d 362; Erdman v. State, 90 Neb. 642, 134 N. W. 258, Ann. Cas. 1913B 577; 58 Am. Jur., Witnesses, § 584, p. 326; 98 C. J. S., Witnesses, § 358, p. 83. The use of the memorandum in this case was proper.

On recross-examination Coleman was asked if the

defendant had ever told him that Abboud, Novak, Butt-
ner, or anyone else was his agent. The witness had
started to answer the question when he was interrupted
and asked to answer it yes or no. When this request was
refused, the defendant moved for a mistrial which was
overruled.

The manner in which a witness may be examined is
within the sound discretion of the court. Jordan v. State,
101 Neb. 430, 163 N. W. 801. The ruling of the trial
court in this case was not an abuse of discretion. See
98 C. J. S., Witnesses, § 352, p. 73.

Both Adams and Novak testified at the trial, but
Abboud did not testify. By instruction No. 35, the trial
court advised the jury that it could not draw any infer-
ence from the fact that Abboud had not testified. Sim-
ilar instructions have been approved where the jury was
advised that nothing may be taken against a defendant
who has not testified. Murray v. State, 119 Neb. 16, 226
N. W. 793; Lamb v. State, 69 Neb. 212, 95 N. W. 1050.

The words "neglect or refusal to testify," to which the
defendant objects, appear in section 29-2011, R. R. S.
1943, which was incorporated verbatim in the instruction.
The instruction did not imply that Abboud had a duty
to testify, and the instruction could not have prejudiced
the defendant in any way. The assignment of error is
without merit.

In his motion for new trial the defendant alleged mis-
conduct on the part of a juror for failing to disclose on
voir dire examination that she had signed a petition to
recall mayor Dworak. The voir dire examination of the
jurors is not a part of the bill of exceptions and it is not
clear as to how the inquiry was made concerning this
circumstance. Apparently, the prospective jurors were
asked generally, as a group, if they had been involved
in any political campaign for the recall of any officers.
At the hearing on the motion for new trial, the juror
testified that no names were mentioned in the question
asked on voir dire, that she probably would have for-

gotten about signing the petition at that time, that she did not form any opinion about the guilt or innocence of the defendant, that she was not acquainted with any of the councilmen, and that the recall was directed only against the mayor.

A motion for new trial for alleged misconduct of a juror is addressed to the sound discretion of the trial court. Sundahl v. State, 154 Neb. 550, 48 N. W. 2d 689. As a general rule a verdict will not be set aside for reasons that would be sufficient to disqualify a juror on a challenge for cause, which existed before the juror was sworn but which was unknown to the accused until after the verdict, unless it appears from the whole case that the substantial rights of the accused were materially affected by the fact that the juror served in the case.

The record in this case does not show an abuse of discretion in the ruling on the motion for new trial.

The judgment of the district court is affirmed.

AFFIRMED.