PATTI HUFF, APPELLANT, v. OTTO SEIPOLD ET AL., APPELLEES.

164 N. W. 2d 916

Filed February 7, 1969.   No. 37038.

William H. Mecham and Charles H. Truelsen, for appellants.

Cassem, Tierney, Adams & Henatsch, John R. Douglas, and Gross, Welch, Vinardi, Kauffman, Schatz & Day, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and WALTER H. SMITH, District Judge.

SMITH, J.

Otto Seipold having gained a jury verdict, Patti Huff in a motion for new trial alleged that misconduct of a juror ought to vitiate the verdict. She complained that the foreman had improperly used a Nebraska driver's manual published by the Department of Motor Vehicles. The district court overruled her motion. She has appealed.

The bill of exceptions contains no verbatim record of the jury trial, and counsel have stipulated few items. The evidence concerns Patti's personal injury claim arising out of two automobile collisions in Sarpy County, Nebraska, at 4:30 p.m., October 8, 1965. She was driving west and Seipold was driving east on State Highway

No. 370 toward an intersecting access road to Interstate Highway No. 80. Seipold entered the intersection to turn left. At that time his car was struck by an overtaking, eastbound car operated by Francis Lechner. The impact drove Seipold's car across the centerline and into the path of Patti's car. The stipulation reads:

"1. * * * the only evidence * * * concerning skid marks came from Highway Patrolman David Hatcliff, who testified that there were one hundred forty-four feet of skid marks from the vehicle driven by Francis Lechner, and twenty feet of skid marks from the vehicle driven by Patti Huff, and no skid marks from the vehicle driven by Otto Seipold. 2. * * * Lechner testified he was driving between sixty and sixty-five miles per hour when he applied his brakes. 3. * * * there was a dispute * * * whether * * * Seipold * * * had given a signal of his intention to make a left hand turn from Highway 370." Contributory negligence of Patti was not asserted.

The jury deliberated from 12:18 to 5 p.m., March 20, 1968, and from 9:30 a.m. to 3.20 p.m., March 21. A 5/6 verdict for Seipold was rendered by the foreman, Frances Filipowicz, and nine other jurors.

The Director of Motor Vehicles had been distributing the driver's manual in connection with examinations for renewals of drivers' licenses. See, §§ 60-411.01 and 60-440, R. R. S. 1943. Frances and the other members of the array heard an open announcement in which the speaker recommended that they obtain copies of the manual for that purpose. Frances received a copy on request at the close of her first day of jury duty. At home in evenings of trial days, she read the following statements in the manual:

"Begin turn signal for at least 50 feet from corner. (500 feet on Interstate) * * * Well ahead of the turn, look for any following cars and move over close to center line, giving signal * * * Allow at least one car length for every 10 mph of speed * * * Total minimum stopping distances with perfect 4-wheel brakes on best type of

road surface under favorable conditions - Mi. Per Hr. * * * 60 * * * Thinking Distance 66 (ft.) * * * Braking Distance 215 (ft) * * * (Total) 281 ft."

At the hearing on Patti's motion for new trial, Frances testified: "I was asking my daughter a lot of questions; she had to take this test, and I have three teenagers, and I want to make sure that they know * * * also I was thinking about this, that within so many feet of tread marks, that with proper signaling that I felt in my own mind that Seipold had given sufficient indication of turn signaling and the guy would have had time to stop. That was in my own mind; I ran across this in stressing this to my own daughters how much distance you have to have in reaction time."

During deliberation of the jury, Frances removed the manual from her purse. She read aloud the instructions for a left-turn signal. Juror Grievious quickly interrupted her, and all agreed that they ought not to consider the statement. Their deliberation ended without further reference to the manual. The jurors, four in number, who testified included Grievious and another who had not signed the verdict. In their opinion, Frances' reading the manual in the jury room had not influenced the verdict.

No instruction to the jury is assigned for error. Instruction No. 12 contains the substance of Neb. Jury Instns. No. 1.01 concerning knowledge of a juror. Instruction No. 9 reads: "The following sections of statutes * * * are submitted for your consideration: * * * A signal of intention to turn left shall be given continuously during not less than the last fifty feet traveled by the vehicle before turning." See, also, § 39-7,115, R. R. S. 1943.

A motion for new trial for alleged misconduct of a juror is addressed to the sound discretion of the trial court. State v. Adams, 181 Neb. 75, 147 N. W. 2d 144; Klein v. Wilson, 167 Neb. 779, 94 N. W. 2d 672. Jury misconduct not calculated to prejudice a substantial right

of the complaining party is no ground for a new trial. Wessel v. Bishop, 76 Neb. 74, 107 N. W. 220. Although a juror's testimony to the effect of misconduct upon him is not directly contradicted, it is not always conclusive on the issue of prejudice. See, Sundahl v. State, 154 Neb. 550, 48 N. W. 2d 689; Whitehead v. State, 115 Neb. 143, 212 N. W. 35. A juror's conduct in obtaining outside, expert opinion to guide the weighing of testimony and in communicating the opinion to fellow jurors during deliberation may vitiate the verdict. See Hoskovec v. Omaha St. Ry. Co., 80 Neb. 784, 115 N. W. 312.

Rules for impeachment of verdicts mediate among public interests in fairness to individual litigants, integrity of trials, and stability of verdicts. Chicago, B. & Q. R.R. Co. v. Oyster, 58 Neb. 1, 78 N. W. 359; Omaha Fair & Exposition Assn. v. Missouri P. Ry. Co., 42 Neb. 105, 60 N. W. 330. See, also, Comment, 25 U. Chi. L. Rev. 360. An additional feature is legislative concern over lack of driver education and need for dissemination of information. See §§ 60-411.01 and 60-440, R. R. S. 1943. Policy measures the degree of misconduct ascribable to given behavior. The degree in turn is to be considered in assessment of the effect of the misconduct.

Frances' knowledge of deceleration was gained innocently. She did not communicate that information to her fellow jurors. Differences between instruction No. 9 and the manual are trivial. There was no prejudicial error.

The judgment of the trial court is affirmed.

AFFIRMED.