STATE OF NEBRASKA, APPELLEE, v. SIDNEY ABRAHAM AND FUD FERRIS, JR., APPELLANTS.
205 N. W. 2d 342

Filed March 9, 1973. No. 38406.

McGrath, North, Nelson, Shkolnick & Dwyer, Miller &

Rowen, Arthur D. O'Leary, J. Thomas Rowen, and J. Patrick Green, for appellants.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

The two defendants were charged under section 28-508, R. R. S. 1943, with receiving stolen property with the intent to defraud the owner. The case was tried to the court sitting without a jury, and from a judgment of guilty and sentence thereon, the defendants appeal. We affirm the judgment and sentence of the district court.

The defendants' first contention on appeal is, in essence, that the descriptive allegations in the information of the character of the goods received are so general as not to charge the statutory offense with the requisite certainty. Because of this, they argue, the information was fatally defective and so their motion in arrest of judgment should have been sustained even though they had not attacked the information by demurrer or motion to quash prior to trial.

The information provides in part as follows: "Sidney Abraham and Fud Ferris, Jr. * * * did * * * feloniously receive *goods of the value of over $100.00 that had been stolen,* with the intent to defraud the owner thereof, the said Sidney Abraham and Fud Ferris, Jr. knowing the goods to have been stolen." (Emphasis supplied.)

An information can be challenged by way of a motion in arrest of judgment if it fails to state facts sufficient to constitute an offense. § 29-2104, R. R. S. 1943. However, the information in the instant case is phrased in substantially the identical language of the statute. The rule is that where, as here, the statute states the elements of the offense, it is sufficient if the informa-

tion describes the offense in the language of the statute. State v. Levell, 181 Neb. 401, 149 N. W. 2d 46; State v. Adams, 181 Neb. 75, 147 N. W. 2d 144; Stage v. Jarrett, 177 Neb. 459, 129 N. W. 2d 259.

Since the information here, although phrased in general language, is sufficient to state an offense, the defendants' challenge really goes only to the requisite certainty and particularity of the information for the preparation of their defense. It is not such a challenge as can be brought by way of motion in arrest of judgment. Instead, a motion to quash is the proper method of attack. § 29-1808, R. R. S. 1943; Matters v. State, 120 Neb. 404, 232 N. W. 781. The defendants failed to avail themselves of this procedure and pleaded not guilty. All defects that may be excepted to by a motion to quash are taken to be waived by a defendant pleading the general issue. § 29-1812, R. R. S. 1943; State v. Fiegl, 184 Neb. 704, 171 N. W. 2d 643; Nelson v. State, 167 Neb. 575, 94 N. W. 2d 1; Green v. State, 116 Neb. 635, 218 N. W. 432. We are aware that an information must inform the accused, with reasonable certainty, of the charge being made against him in order that he may prepare his defense thereto and be able to plead the judgment rendered thereon as a bar to later prosecution for the same offense. State v. Huffman, 181 Neb. 356, 148 N. W. 2d 321; State v. Adams, *supra.* However, if the information here was not sufficiently specific to satisfy the defendants, they were afforded a remedy by motion to quash. It must be presumed that they were aware of the nature and cause of the charges against them since they were willing to proceed to a defense on the general issue without further clarification of the charges being requested. As to whether this information was sufficient to enable the defendants to plead the judgment as a bar to any subsequent prosecution, we apply the rule of State v. Adams, *supra,* which says: "An indictment or information alone need not be full protection against

double jeopardy because a defendant may allege and prove facts outside the record in support of a plea of former adjudication." The defendants' assignment of error in the overruling of their motion in arrest of judgment is therefore without merit.

The defendants' remaining contentions are addressed to the sufficiency of the evidence to sustain their convictions. The defendants first assert that the evidence will not support beyond a reasonable doubt a finding that the meat the defendants possessed was stolen.

It was found at trial that a trailer was stolen from the storage lot of the Iowa Beef Processors' plant at Dakota City in the early morning of May 23, 1971. The trailer contained some 30,000 pounds of meat identified as 200 boxes of chuck tenders and 300 boxes of chuck rolls. On the late evening of May 27, or the early morning of May 28, 1971, the defendants were at the St. Christopher's Inn in Valentine, Nebraska, which is owned by the defendant Ferris. It is undisputed that, while there, the defendants consummated a purchase of some 15,000 pounds of chuck rolls and chuck tenders, which normally sells for around 65 cents per pound wholesale, for 45 cents per pound. The defendants claimed at trial that the meat was bought from a truck driver who said his refrigeration unit was malfunctioning and, being unable to find storage facilities for the meat, was authorized by his superiors to sell at a loss. At any rate, the driver would accept only cash in payment for the meat and has not been heard from since.

The defendants initially stored the meat in the party room at the St. Christopher's Inn, but, being unable to keep it properly cooled, they sold it the next day to William Joseph, the owner of the Corner Market located in Valentine. On June 3, 1971, the supervisor of security for Iowa Beef Processors, in response to a phone call from state agent Vern Omer, went to the Corner Market in Valentine, Nebraska. He inspected the meat which Joseph had bought from the defendants

and observed on the meat remnants of the federal inspection stamp 245-C, which was the number assigned to the Iowa Beef Processors' Dakota City plant. The meat was found to be wrapped in cryovac bags, which is the type of plastic bag used by the Iowa Beef Processors. Samples of the metal clamps crimping the cryovac bags on the meat found in the Corner Market were forwarded to the F.B.I. in Washington, D.C., along with samples of crimped clamps from the Dakota City plant. A laboratory expert from the F.B.I. concluded that the crimped clamps matched up. The security supervisor testified that he had no reports from anyone in his organization as to any other loss of meat of this type.

The evidence clearly establishes a chain of circumstances which reasonably leads to the conclusion that the meat which passed through the hands of the defendants was stolen. While the evidence was all circumstantial, a conviction may be based upon circumstantial evidence when the facts and circumstances tending to connect the accused with the crime charged are of such conclusive nature as to exclude to a moral certainty every rational hypothesis except that of guilt. State v. Morgan, 187 Neb. 706, 193 N. W. 2d 742; Hoffman v. State, 162 Neb. 806, 77 N. W. 2d 592. This case was tried to the court without a jury and the weight and credibility of the evidence were clearly for the determination of the trier of fact. State v. Embrey, 188 Neb. 649, 198 N. W. 2d 322. The evidence here was sufficient to sustain the finding of the trial court that the meat which passed through the hands of the defendants was that which was stolen from the Iowa Beef Processors plant in Dakota City.

The defendants' final contention is that there was insufficient evidence to establish guilty knowledge on the part of either defendant. Defendant Ferris is 40 years of age and the defendant Abraham is 43 years of age. Both are experienced businessmen. They were

approached on business in the middle of the night by a man they did not know and they made no attempt to ascertain his identity or who he worked for. They bought the meat at a price substantially below the going rate and, at the insistence of the unidentified vendor, paid in cash. No bills of lading were checked by the defendants; no bill of sale was made out; and no receipt was given for the cash paid. In a prosecution for receiving stolen property, when facts known to a defendant were such that a man of the age, intelligence, and experience of the defendant would know the property to have been stolen, the trier of fact may properly find the defendant possessed guilty knowledge. State v. Alcorn, 187 Neb. 854, 194 N. W. 2d 798; State v. McKee, 183 Neb. 754, 164 N. W. 2d 434.

Perhaps even more significant and incriminating is the testimony in the record that Ferris, while talking to a police officer during the unloading of the meat, stated "We have been waiting for this damn truck for two hours." The trial judge was entitled to believe this testimony. It indicates clearly that the meat was delivered to the two defendants under a prior agreement. It indicates that the agreement was entered into prior to the actual arrival of the meat and that it was not an impromptu arrangement necessitated by an unanticipated mechanical failure. It not only indicates a prearranged sale at a significantly reduced price of the meat, but it also indicates the falsity of the defendants' attempted explanation of how they came into possession of the stolen goods. Both inferences are not only reasonable conclusions to be made by the trier of fact, but are highly pertinent under our relevant decisions to the determination of intent. In conclusion, it may be said that everything connected with the sale of the meat involved in this case was of such a nature as to arouse the suspicions of all but the most naive of men. We come to the conclusion that the evidence is amply sufficient to sustain the trial court's finding that the

goods were stolen and that there was guilty knowledge on the part of both defendants.

The judgment of the district court is correct and is affirmed.

AFFIRMED.