STATE OF NEBRASKA, APPELLEE, V. JEFF PARKS,
APPELLANT.

324 N.W.2d 673

Filed October 1, 1982.  No. 82-221.

Richard L. Kuhlman, for appellant.

Paul L. Douglas, Attorney General, and Frank J. Hutfless, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

HASTINGS, J.

The defendant, Jeff Parks, was convicted by a jury of the felony crimes of delivery of lysergic acid diethylamide and delivery of marijuana. Following concurrent sentences of 5 to 10 years and 4 to 8 years, the defendant has appealed to this court. His assignments of error include the jury's rejection of his defense of entrapment, the trial court's sustaining of the State's motions in limine, its failure to give an instruction on the testimony of a paid informer, its overruling of a plea in abatement, and the excessiveness of the sentences.

The basic facts in this case are not in dispute. The defendant was contacted by one James Louden on July 3, 1981. This contact was initiated by Louden to determine if a friend of Louden's, an undercover patrol officer, could buy a quantity of marijuana from Parks. At this time, Parks indicated that such a sale was possible, but not at that precise time. Parks told Louden to contact him later. At all times relevant to this case, James Louden was acting as a

paid cooperating individual with the Nebraska State Patrol.

After Louden's initial contact with Parks, Louden recontacted Parks 8 to 10 times in the following few days. Each of these times Parks stated that he was having trouble making contact with his source and instructed Louden to get in touch with him again later. On July 7, 1981, a buy was set up between undercover officer Charles L. Phillips, Louden, and Parks. Officer Phillips and Louden picked up Parks at his residence located at 903 Pierce Street in Fremont on July 7. Under Parks' direction they all three proceeded to 605 South I Street in Fremont. Upon their arrival, Parks, leaving Louden and Officer Phillips in the vehicle, went into an apartment building located at that address. After some time elapsed, Parks returned to the vehicle and asked, "Would anybody be interested in any acid?" meaning lysergic acid diethylamide (LSD). Officer Phillips agreed to purchase some. Parks then returned to the apartment building and came back with a quarter pound of marijuana and five "hits" of LSD. Officer Phillips paid $125 for the marijuana and $10 for the LSD. Sometime later, Parks was arrested.

The trial court properly instructed the jury on the defense of entrapment. The test to determine when a party has been entrapped is set forth in *Sherman v. United States,* 356 U.S. 369, 78 S. Ct. 819, 2 L. Ed. 2d 848 (1958), and has been followed in Nebraska. "Where a person has no previous intent or purpose to violate the law, but does so only because he is induced to commit the act by law enforcement officers or agents, he is entitled to the defense of entrapment. But where a person already has the readiness or willingness to violate the law, the fact that an officer or agent provides a favorable opportunity for the violation does not constitute entrapment." *State v. Lampone,* 205 Neb. 325, 328, 287 N.W.2d 442, 444 (1980). The question to be answered by the court

under the test is whether or not the defendant was predisposed to recommit the offense in question.

Entrapment is a defense "which is in the nature of an affirmative defense . . . ." *State v. Ransburg,* 181 Neb. 352, 354, 148 N.W.2d 324, 326 (1967). This being so, the defendant has the initial burden of going forward with evidence of governmental involvement and inducement. The ultimate burden, however, as in all criminal cases, is on the government. This is the risk of nonpersuasion.

When assessing the evidence in an entrapment case, a two-step process is used. First, the court must determine if the defendant has submitted sufficient evidence to give rise to the defense. This requires only *"more than a scintilla"* of evidence. *United States v. Wolffs,* 594 F.2d 77, 80 (5th Cir. 1979). If the defendant meets this burden, the question of entrapment becomes one of fact to be decided by the jury. See, *United States v. Wolffs, supra; United States v. Rodrigues,* 433 F.2d 760 (1st Cir. 1970).

In the present case the defendant did introduce evidence of governmental involvement, inducement, and lack of predisposition on the part of Parks. This was done mainly by way of Parks' direct testimony. The evidence offered was more than a mere scintilla, making the entrapment question one for the jury to decide. The jury found against defendant Parks on this question, since they found him guilty.

When reviewing questions decided by the trier of fact in a criminal case, this court has stated the standard of review to be a limited one. "It is not the province of this court to resolve conflicts in the evidence, pass upon the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evi-

dence to support it.'' *State v. Woodruff,* 205 Neb. 638, 640-41, 288 N.W.2d 754, 757 (1980). More specifically, when reviewing jury verdicts regarding the defense of entrapment, this court has stated: ''Facts constituting entrapment, which is in the nature of an affirmative defense, are ordinarily to be determined by the jury or trier of fact in each individual case, and its findings will be disturbed only when the preponderance of evidence against such findings is great and they clearly appear to be wrong, or when the findings are clearly contrary to law.'' *State v. Ransburg, supra* at 354-55, 148 N.W.2d at 326. Inasmuch as this is the standard of review, the only inquiry for the court to make in this case is, was there sufficient evidence in the record on which the jury could have based its verdict?

In finding predisposition the jury need not look specifically to any particular fact or piece of evidence. Rather, the jury may find predisposition on the part of the defendant from the totality of the circumstances. This was the conclusion reached by the Court of Appeals in *United States v. Rodrigues, supra.* The facts in *Rodrigues* are similar to those in the present case. In *Rodrigues* the court faced a defendant convicted of selling drugs to a government agent. The defendant Rodrigues raised the question of entrapment, and in response to this defense the government had no direct evidence of predisposition on the defendant's behalf. Specifically, Rodrigues had not been convicted of selling drugs before, as is the situation with Parks in the present case. The defendant was convicted of the sale of drugs, and, reviewing the jury's verdict, the appellate court stated: ''A jury can find predisposition beyond a reasonable doubt by looking to the totality of circumstances involved in the particular transactions in question. Otherwise, a first offender, disposed to commit the crime for which he is charged, would find sanctuary in the entrapment defense

merely because the government would be unable to prove prior nonexistent activities. The entrapment defense does not require such a result. The court's denial of the appellant's motion for acquittal was proper." *Id.* at 762.

In the present case the State has offered no direct evidence of the defendant's predisposition to commit these crimes. There is circumstantial evidence in the record, however, upon which the jury might have found predisposition. First, the defendant admitted prior use of and contact with drugs, including weekly use of marijuana; second, Parks indicated readiness and willingness to enter into this illegal transaction when first asked; and third, it was Parks himself who first made the unsolicited offer to sell LSD.

The State's motions in limine prohibited the defendant from questioning the cooperating individual, Louden, relative to other cases upon which he was working and from adducing evidence concerning the contents of a certain written employment agreement existing between the Nebraska State Patrol and Louden. As to the first motion, it was the position of the State that the other cases Louden was working on were ongoing investigations which would be prejudiced by making them public. As to the second motion, the State claimed a privilege under the provisions of Neb. Rev. Stat. § 27-509 (Reissue 1979).

We might point out at the outset that there is no claim by the defendant that the State did not furnish to the defense all information it had relative to the prosecution of the defendant. However, the defendant's main contention, as expressed by his counsel, is that by sustaining the motions in limine the defendant's right of cross-examination was unduly restricted. This, he says, hampered his ability to bring forth impeachment testimony, and particularly with reference to a discrepancy which seemed to exist as to the date that Louden first talked to

Officer Williams. That date, it is claimed, would appear on the face of the written agreement. However, the State offered to stipulate that the date appearing on the agreement was November 7, 1980. Secondly, defense counsel was allowed the opportunity to inspect the agreement in all details. Finally, the State did not call Louden as a witness, so there was no testimony for the defense to impeach. Any evidence which would have been available to the defendant but for the motions in limine would have been irrelevant and collateral to the pending case. "[I]n criminal cases it is not error to exclude evidence which is not substantive proof of any fact relative to the issue, and evidence which does not tend to establish the guilt or innocence of a defendant of a crime charged is immaterial and should be excluded." *Scherer v. State,* 168 Neb. 127, 135, 95 N.W.2d 329, 334 (1959).

The defendant argues also that the trial court erred in not giving a specific instruction cautioning the jury on the testimony of James Louden, the paid cooperating individual. "Where informers, detectives, or other persons employed to hunt up testimony against the accused are called to testify against him, he is entitled to an instruction to the jury that in weighing their testimony greater care should be exercised than in the case of witnesses who are wholly disinterested. The accused is *not entitled to a cautionary instruction where the witnesses against him are regular public law enforcement officers.*" (Emphasis supplied.) *State v. Gurule,* 194 Neb. 618, 622, 234 N.W.2d 603, 607 (1975).

The only witnesses called by the State who testified against the defendant were all regular officers of the Nebraska State Patrol. Louden, the cooperating individual, was not called by the State, but by the defendant. The defendant was not entitled to an instruction as provided for in *Gurule.* The general instruction given by the trial court regarding

the weight and credibility of the witnesses was therefore sufficient.

Defendant's claimed error regarding the plea in abatement is without merit. He was charged by complaint in the county court in the words of Neb. Rev. Stat. § 28-416 (Reissue 1979) that he did "unlawfully . . . manufacture, distribute, deliver or dispense a controlled substance . . . ." He argues that there was no evidence at the preliminary hearing "even suggesting that Defendant manufactured . . . a controlled substance." He does not claim that the evidence was lacking as to delivery.

The words "manufacture" and "dispense" were entirely irrelevant to the crime charged and proved. Where the elements of a crime defined by statute are set out in an information or complaint, it is sufficient; and if words appear in such information or complaint which might be stricken, leaving a crime sufficiently charged, and such words do not tend to negative any of the essential averments, they may be treated as surplusage and be entirely rejected. *State v. Matejka,* 186 Neb. 454, 183 N.W.2d 917 (1971).

Furthermore, any challenge to a complaint or information as to certainty, particularity, or redundancy may be made by a motion to quash. *State v. Abraham,* 189 Neb. 728, 205 N.W.2d 342 (1973). Although such a motion was filed by the defendant, it did not object to the words now under attack, nor did it suggest that the defendant was confused as to the actual crimes with which he was charged. Specifically, the motion recites that the defendant "moves the Court for an order quashing the complaint charging 2 counts of *delivery* of controlled substance" because it did not allege the specific acts constituting misconduct on the part of the defendant. (Emphasis supplied.) The record does not disclose that this motion was ever called for hearing or ruled upon by the court. However, simultaneously with the filing of this motion to quash, the defendant also

filed a demurrer, and later on entered a plea of not guilty by reason of entrapment. By both demurring and pleading to the general issue without requesting a ruling on his motion to quash, the defendant has waived all defects which were or could have been excepted to by a motion to quash. *State v. Abraham, supra; Buthman v. State,* 131 Neb. 385, 268 N.W. 99 (1936).

Finally, the defendant challenges the sentences as excessive. Both crimes of which the defendant was convicted are Class III felonies. Neb. Rev. Stat. §§ 28-416(1)(a) and (2)(b) and 28-405(I)(c)(9) and (10) (Cum. Supp. 1982). A Class III felony is punishable by a maximum term of imprisonment of 20 years or a fine of $25,000, or both, and a minimum term of imprisonment of 1 year. Neb. Rev. Stat. § 28-105 (Reissue 1979). In the absence of an abuse of discretion by the trial court we will not disturb on appeal a sentence imposed within the statutory limits. *State v. Bosak,* 207 Neb. 693, 300 N.W.2d 201 (1981).

According to the presentence investigation report, the defendant has had no prior felony convictions, and, as a matter of fact, all of his official encounters with the law have been as a juvenile. He is 20 years of age, single, completed the 11th grade in high school, and is currently working for his father as a mechanic. He was referred to a community mental health center in 1977. This referral was by the juvenile court, and although the investigation report does not disclose what activity of the defendant prompted the referral, it was to have been for 30 to 60 days. However, according to the director of the service, the defendant made no effort to help himself or participate in the program of treatment and the defendant's father "was obnoxious and denied that there was any problem with Jeffery [sic]." The director concluded that the defendant was unable to make any use of the facilities of the mental health

center, and concluded that he needed a more structured environment, such as the Youth Development Center-Kearney, for a period of 6 months to 1 year. Accordingly, he was discharged in 4 or 5 days. Further, according to the presentence investigation report, it was a generally accepted fact among Dodge County law enforcement officers that if a person wanted any kind of drugs they could be purchased from the defendant.

The defendant testified that he had used marijuana about every week on a Friday and Saturday since he had been in senior high school, but had only used LSD once. He denied that he had ever sold drugs before, but stated that he did so on this occasion because he needed the money.

It is true that the sentences imposed in this case are somewhat above what would be considered minimum sentences. However, if the sale and distribution of drugs is to be discouraged, one of the main factors to consider and eliminate is the profit motive. This seems to have been one of the considerations which was of importance to the trial judge. The presentence report would seem to justify his belief that, contrary to the denial of the defendant, the defendant was in fact involved in more than a single isolated sale.

Under the circumstances, we cannot say that the sentences imposed constituted an abuse of discretion by the trial court. The judgment and sentences of the District Court are affirmed.

AFFIRMED.

CLINTON, J., participating on briefs.