UNITED STATES of America, Plaintiff,

v.

Kenneth O'Larry GLENN, Defendant.

No. 83–6014–01–CR–SJ–6.

United States District Court,
W.D. Missouri,
St. Joseph Division.

Jan. 13, 1984.

Thomas Larson, Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

Raymond C. Conrad, Federal Public Defender, Kansas City, Mo., for defendant.

### AMENDED ORDER DENYING MOTION TO SUPPRESS

SACHS, District Judge.

Pending before the Court is defendant's motion to suppress evidence seized from an

automobile, bearing Oklahoma license LN 9205, pursuant to a search warrant obtained by local authorities in Cheyenne, Wyoming, after defendant's apprehension on September 15, 1983. Defendant also moved to suppress a Federal Express Courier-Pak and currency found in a later search in Oklahoma. The United States subsequently informed the Court in a responsive pleading that it will not use the latter evidence at trial, thus mooting the second motion to suppress.

According to undisputed testimony, defendant first was stopped when Deputy Sheriff Glick observed his automobile swerving across the center line of an avenue at 1:39 a.m. in Cheyenne, Wyoming. Defendant claimed that he turned across the highway in order to reverse his direction. After the vehicle was stopped, Glick "ran" the license plates through the National Crime Information Computer (NCIC), which resulted in a "hit." Glick testified that the hit indicated that the vehicle was stolen or involved in a felony or that the owner was wanted. Upon learning of the hit, Glick called for a backup. After the backup, Deputy Mark Pfenning, arrived, they advanced with their guns drawn, removed defendant from the car, patted him down, and searched the car. Glick testified that they thought the car was stolen (the most frequent cause of a "hit"), and so told defendant. Defendant told them that registration papers were in the glove compartment, but did not suggest a search. Glick did not ask permission to enter the automobile. When Glick entered the car to retrieve the papers, he saw the butt of a .38 caliber pistol protruding from under the driver's seat and removed it. Thereafter, the search became more thorough. Glick removed the keys from the ignition and began to search the trunk. In the trunk Glick saw a dark blue nylon backpack, a paper bag containing a dark blue baseball-type cap, two dark wigs, and a blue flannel shirt. Sergeant Bomar arrived and a discussion ensued with respect to the validity of the NCIC hit. The vehicle's and gun's registrations were checked and came back with negative "wants."

They concluded that the hit probably was invalid and Sgt. Bomar ordered Glick to stop searching the trunk. Before releasing defendant, the officers informed defendant of the circumstances and advised him that he might be stopped in the future and suggested how he should act to avoid harm to himself. They also encouraged him to contact the Oklahoma authorities to clear up the matter regarding his vehicle license plate.

The officers subsequently learned from Sergeant Dawson of the Kansas City, Missouri Police Department that an unidentified individual somewhat resembling defendant was a suspect in the robbery of a savings and loan in Kansas City, Missouri. A stocky, heavy-set male was seen leaving the vicinity of the robbery in a vehicle bearing Oklahoma license LN 9205. The officers alerted the surrounding police departments. At approximately 3:17 a.m. Richard Bridge of the Pine Bluffs Police Department arrested defendant. Pine Bluffs and Cheyenne are both in Laramie County. The vehicle was impounded. Detective Jess Fresquez prepared an affidavit seeking a search warrant for the vehicle at the request of Doug Wihelmi, a local FBI agent who apparently had never before prepared such an affidavit. A Laramie County Judge, Robert Allen, issued the search warrant based upon the affidavit. The vehicle was searched and the evidence which defendant wishes the Court to suppress was seized.

Defendant contends that the search warrant was invalid, primarily because the affidavit failed to mention the earlier search, although the affidavit did mention the first stopping of defendant. Defendant asserts that if Judge Allen had known of the earlier search, he probably would not have issued the search warrant.

The United States contends, rather faintly, that the earlier search was valid, but that even if it was not the omissions in the affidavit do not require a finding that the entire affidavit was invalid. Alternatively, the United States suggests that the "inevitable discovery" doctrine may be applied in

this case because after the arrest of the defendant, the validity of which is not challenged, a legal inventory of the impounded vehicle, or a search warrant based upon an affidavit containing the results of further investigation, would no doubt have produced the same evidence.

■ The first search of the trunk of defendant's vehicle was illegal. The search was not conducted for any emergency reason, such as the protection of the officers or after an arrest. As the Eighth Circuit held in *United States v. Wilson*, 636 F.2d 1161, 1165 (8th Cir.1980), "[a]bsent a special justification for a more extensive intrusion, the routine search of a locked automobile trunk is unreasonable under the fourth amendment." *But cf. United States v. Martin*, 566 F.2d 1143, 1145 (10th Cir.1977) (inventory search of automobile trunk after arrest permissible). Furthermore, the officers did not then have probable cause to believe that contraband was concealed within the trunk of the automobile. *See United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The Supreme Court held in *Ross* that "the scope of a warrantless search ... is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825, 102 S.Ct. at 2172. *See also Michigan v. Long*, —— U.S. ——, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *Michigan v. Thomas*, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1983). In the case at bar, the officers had no probable cause to believe that contraband was concealed within the trunk at the time of the first search.[1]

■ The Court's conclusion that the first search of the trunk was invalid does not compel the Court to suppress the evidence. As the Eighth Circuit has held, a "trial court need not suppress evidence gained through an independent source, notwithstanding any prior illegality." *United States v. Beck*, 662 F.2d 527, 530 (8th Cir. 1981). *See also United States v. Perez*, 714 F.2d 52, 54 (8th Cir.1983); *United States v. Torgersen*, 690 F.2d 682, 684 (8th Cir.1982). The focus of the Court's inquiry becomes whether the earlier illegal search sufficiently tainted the affidavit such that the subsequent search warrant signed by Judge Allen would be invalid. The Court finds that there was an adequate basis for the affidavit, subsequently obtained, to justify the search warrant. The failure to mention the prior search of the vehicle in Detective Fresquez's affidavit does not render the search warrant invalid. *See United States v. Dennis*, 625 F.2d 782, 791 (8th Cir.1980); *United States v. Collins*, 549 F.2d 557, 561 (8th Cir.), *cert. denied*, 431 U.S. 940, 97 S.Ct. 2656, 53 L.Ed.2d 259 (1977). Detective Fresquez testified, not very convincingly, that he did not know the results of the first search of the trunk of the defendant's vehicle. While the Court is not satisfied that the omission was the result of "mere inadvertence caused by the press of time ...", the omission, even if reckless, was not material to the establishment of probable cause." *United States v. Collins*, 549 F.2d at 561. Omissions of other facts are not "misrepresentations unless they cast doubt on the existence of probable cause." *United States v. Dennis*, 625 F.2d at 791. Under the "totality of the circumstances" analysis outlined in *Illinois v. Gates*, —— U.S. ——, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), this Court is satisfied that the affidavit provided enough

---

**1.** The search of the passenger portion of the vehicle presents a closer question of reasonableness, but the entry and opening of the glove compartment probably were properly incident to a *Terry* stop, (*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), and appropriate investigation of title registration under the circumstances at bar. *Cf. United States v. Sears*, 663 F.2d 896, 902–3 (9th Cir.1981). The alterna-

tive would apparently have been to make a preliminary search of the passenger compartment before asking defendant to procure the title registration. In any event, even if discovery of the pistol and its use in the affidavit were improper, the pistol is not considered to be a determining factor and its mention was not, therefore, prejudicial.

untainted information for Judge Allen to conclude that there was probable cause to issue a search warrant.[2]

An alternative ground exists for this Court to uphold the second search of the defendant's vehicle, although some legal novelty is involved in the theory here advanced. The Eighth Circuit among others follows the inevitable discovery exception to the exclusionary rule. *See United States v. Apker*, 705 F.2d 293, 307 (8th Cir.1983) (citing cases). "This exception allows illegally obtained evidence to be admitted if it would have been discovered in the course of a proper investigation." *Id.* at 306.

Detective Fresquez testified that Laramie County policy would have required an inventory search of the vehicle, even if a search warrant had not been sought. While defendant was in jail, and if the car had been unsealed and placed in a garage or unsecured lot, Cheyenne police policy would have required an inventory. While the Eighth Circuit is more restrictive as to inventory searches, *see United States v. Wilson*, 636 F.2d at 1164–65, such an inventory search of defendant's vehicle in Wyoming probably would have been upheld by the Tenth Circuit. *See United States v. Long*, 705 F.2d 1259, 1262 (10th Cir.1983); *United States v. Martin*, 566 F.2d 1143, 1145 (10th Cir.1977). It is not unreasonable for the local police to follow the Tenth Circuit's rule. *See South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *United States v. Reese*, 561 F.2d 894, 903 n. 17 (D.C.Cir. 1977); *United States v. Edwards*, 577 F.2d 883, 893 (5th Cir.) (en banc), *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978). It may be quixotic to suggest that police officials and their legal advisers

should follow a more restrictive rule than is imposed by the Court of Appeals for their Circuit.

At the time defendant was arrested, Judge Allen had good cause to believe that defendant had committed a crime under Wyoming law, *see* Wyo.Stat. § 6–3–403(a)(i) (1977) (possession of stolen property) *and* Affidavit of Detective Fresquez ¶¶ 23 and 24 (Sept. 15, 1983) (Glenn had sequentially-numbered $50 bills in his possession at the time of his arrest), for which Rule 40(b), Wyo.R.Cr.P., would allow the issuance of a search warrant:

> A warrant may be issued under this rule to search for and seize any property
>
> (1) stolen or embezzled in violation of law; or
>
> (2) designed or intended for use or which is or has been used as the means for committing a criminal offense; or
>
> (3) possessed, controlled, or designed or intended for use or which is or has been used in violation of any law; ....

If the search warrant would have been permissible and the evidence seized, thereunder, would have been usable under Wyoming and Tenth Circuit law, the purposes of the exclusionary rule—to deter illegal police conduct—would in no way be served by excluding the evidence here. *See generally Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960).[3] Accordingly, it is hereby

ORDERED that defendant's motion to suppress evidence seized from a Federal Express Courier-Pak and currency found therein is DENIED as moot. It is further

ORDERED that defendant's motion to suppress evidence seized from an automo-

---

**2.** The Court suspects that more sophisticated lack of candor existed than was conceded by the witnesses; that is, it seems likely there was an avoidance of "problem areas" in preparing and presenting the affidavit. Special Agent Wilhelmi's failure to testify was interesting. The fault does not appear, however, to exceed the failure to disclose an informant's criminal record which was not considered fatal in *Dennis*, 625 F.2d at 791.

**3.** Unlike the situation when the exclusionary rule was adopted, damage suits for Fourth Amendment violations have become commonplace. *Cf., Polson v. City of Lee's Summit*, 535 F.Supp. 555 (W.D.Mo.1982). While this does not justify discontinuance of the exclusionary rule, it may serve to prevent enlargement of the rule as the "only effective remedy" for police misconduct.

bile bearing Oklahoma license LN 9205 is DENIED.