STATE OF NEBRASKA, APPELLEE, V. MICHAEL E. McGUIRE,
APPELLANT.

357 N.W.2d 192

Filed October 26, 1984.
Nos. 83-674, 83-675, 83-676, 83-677, 83-678.

Thomas M. Kenney, Douglas County Public Defender, and
Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan,
for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE,
and SHANAHAN, JJ.

BOSLAUGH, J.

The defendant, Michael E. McGuire, was charged in case
No. 83-675 with robberies of Jerico's restaurant in Omaha,
Nebraska, on or about October 16 and November 20, 1982, and
use of a firearm in the commission of a felony on each occasion.
In case No. 83-676 he was charged with first degree sexual
assault and the robbery of the Spaghetti Works in Ralston,
Nebraska, on or about November 13, 1982. Upon the motion of

the State these cases were consolidated for trial, and the jury returned verdicts of guilty on all counts.

The defendant pleaded guilty or nolo contendere to the remaining charges against him. Those included, in case No. 83-674, the robbery of Reuben's restaurant in Omaha, Nebraska, on or about November 27, 1982, and use of a firearm in the commission of a felony; in case No. 83-677, the robbery of the Cinema Center in Omaha, Nebraska, on or about September 24, 1982, and use of a firearm in the commission of a felony; and in case No. 83-678, the kidnaping of Clarence Landen III on or about February 16, 1983, and use of a firearm in the commission of a felony.

The defendant was adjudged guilty on all counts in all cases and sentenced to imprisonment for 61 to 170 years.

The defendant has appealed and has assigned as error the overruling of his motion to suppress the evidence taken from the automobile at the time of his arrest; the consolidation for trial of cases Nos. 83-675 and 83-676; and that the sentences imposed were excessive.

The first robbery of Jerico's restaurant occurred on October 16, 1982. The evidence is that the defendant entered the lounge at approximately 11 p.m. and sat at the bar. At about 12:30 a.m. the defendant pulled out an automatic pistol and, while holding the gun on a waitress, ordered the bartender to put the money in a paper sack. Before leaving, he forced the bartender and waitress into a walk-in cooler.

The robbery of the Spaghetti Works occurred on November 12, 1982. The evidence in that case is that the defendant entered the restaurant at about 10 p.m., sat at the bar, and had several conversations with the woman who was the assistant manager. At about 11:30 p.m., while approximately 12 persons including employees and customers were in the restaurant, the defendant pulled out an automatic handgun and committed the robbery. After he had collected the money he placed everyone except the assistant manager in the walk-in cooler and then sexually assaulted the assistant manager.

The second robbery of Jerico's restaurant occurred on November 20, 1982. The evidence is that when the defendant entered the bar at about 12:30 a.m., he was recognized by the

waitress who had been present during the first robbery. She attempted to leave, but the defendant pulled out a gun and forced her to stay. During this robbery, the defendant said something to the waitress about "dropping her drawers," but she was able to talk the defendant out of an assault.

The defendant was arrested in Burlingame, California, on March 2, 1983. The arresting officer had received information to be on the lookout for a gold Pontiac TransAm with Nebraska license plates, the rear plate in a holder with the word "Guam" inscribed on it. The bulletin further described a white male driver, armed and dangerous—possibly carrying a .45 automatic—and a white female passenger. At approximately 3:20 a.m., while making his rounds, the officer spotted the suspect vehicle parked in a convenience store parking lot near a phone booth in which both the defendant and his companion were standing.

The defendant was immediately handcuffed and placed in the back seat of an assisting officer's patrol car. The woman was not arrested; at the time, however, she was instructed not to move as she was being watched by a K-9 police dog. The arresting officer thereupon looked into the TransAm, where he saw, in plain view, a clear plastic baggie containing marijuana and a pipe. Conducting a search of the interior of the car, the officer found, among other things, a loaded .357 Magnum and a Walther .380 in the console between the seats. When he did not find the .45 automatic described in the bulletin, the officer took the keys from the ignition and opened the trunk. Finding luggage inside, the officer asked the defendant if he wanted it left in the trunk, where its safety was not guaranteed, or taken to the police station and inventoried. The defendant chose the latter. The inventory yielded a pair of black driving gloves, a nylon jacket, a plaid, long-sleeved shirt, and a gray tweed coat; all of which were admitted into evidence at trial and identified by some of the witnesses.

The defendant's first contention is that his motion to suppress should have been sustained because the search of the trunk of the automobile violated his fourth amendment rights.

In *United States v. Ross*, 456 U.S. 798, 825, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982), the Supreme Court held: "If probable

cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Ross* involved two separate searches of a car's trunk—one search made after the vehicle was stopped pursuant to an informant's tip, another made after the car had been taken to police headquarters. Permitting the heroin and cash found to be used against the defendant, the court reasoned that a lawful search extends to the entire area in which the sought-after object may be found and that it is not limited by the necessity for separate acts of entry to complete the search.

> When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between . . . glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

456 U.S. at 821.

In this case the arresting officer was forewarned that the defendant might be armed with a .45 revolver. Since the description of the car and its occupants was on target and the search of the vehicle's interior yielded marijuana and two other guns, it was not unreasonable for the officer to search for the .45 in the trunk. The search was further justified by the fact that the defendant's female companion could have taken the alleged gun from the car later, as could have anyone.

In *Cady v. Dombrowski*, 413 U.S. 433, 448, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973), the Supreme Court said: "Where, as here, the trunk of an automobile, which the officer reasonably believed to contain a gun, was vulnerable to intrusion by vandals, we hold that the search was not 'unreasonable' within the meaning of the Fourth and Fourteenth Amendments." In *Cady* a Chicago police officer was arrested; the arresting officer, who was under the impression that Chicago police officers were required to carry their service revolvers at all times, conducted a warrantless search of the car to find the gun. See, also, *United States v. Nygard*, 324 F. Supp 863 (W.D. Mo. 1971), where police officers had teletype information that the defendant was "alleged to have pistol in possession and has

threatened to use same on father," *id*. at 865, and where at the time of defendant's arrest that gun was not on his person, officers had probable cause to search the car. It is well established that vehicles "may be stopped and searched on facts giving rise to probable cause that the vehicle contains contraband, without the protection afforded by a magistrate's prior evaluation of those facts." *United States v. Ross, supra* at 806 n.8.

It has also been established that where probable cause exists for the arrest of an individual in a motor vehicle, and at that time probable cause also exists to search the vehicle, then a search of the vehicle made at the police station a short time later is not unreasonable even if made without a warrant. *State v. Franklin*, 194 Neb. 630, 234 N.W.2d 610 (1975) (citing *Chambers v. Maroney*, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970)). In *Franklin*, quoting *Chambers*, we said at 640, 234 N.W.2d at 616:

> "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. . . . The probable-cause factor still obtained at the station house and so did the mobility of the car . . . ."

Thus, having probable cause to search the car, including its trunk and contents, at the time of the arrest, that probable cause still existed after the car was moved to the safety afforded at the police station.

Defendant contends, however, that *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982), does not apply to the facts at bar. Rather, he argues that *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), limits the scope of the search to the passenger compartment of the car. In *Belton* the Court held that when a lawful custodial arrest has been made of the occupant of a vehicle, a search may be made of the passenger compartment. The defendant distinguishes *Ross* as entailing a search that resulted in an arrest, and states that "the unlocking of the trunk, observation of the suitcases and eventually taking them into custody was an unlawful search and seizure pursuant to *Belton*." Brief for

Appellant at 15.

*Belton*, however, was concerned with what constitutes "the area within the immediate control of the arrestee" when the arrestee is in a vehicle. 453 U.S. at 460. Where there is both probable cause for an arrest and probable cause to search, as in the case at bar, it would seem that the scope of the latter would be controlled by *Ross*.

Assuming, however, that there was no probable cause to search the trunk, the evidence obtained was still admissible. Under the inevitable discovery exception to the exclusionary rule, illegally obtained evidence can be admitted if it would have been discovered in the course of a proper investigation. *United States v. Glenn,* 577 F. Supp. 930 (W.D. Mo. 1984). In the case at bar the evidence objected to was first seen by the police when the luggage was opened in an inventory search. The U.S. Supreme Court has held that inventory searches are reasonable. *Illinois v. LaFayette,* 462 U.S. 640, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983). Accord *State v. Hack and Callans,* 212 Neb. 406, 322 N.W.2d 806 (1982).

Finally, in light of the overwhelming evidence of guilt against this defendant and the number of positive identifications made, the admission into evidence of the articles of clothing objected to was not prejudicial.

Defendant's next assignment of error relates to the consolidation for trial of the Jerico's robberies and the Spaghetti Works robbery and assault. With respect to consolidation of cases for trial, Neb. Rev. Stat. § 29-2002 (Reissue 1979) provides in part:

> (1) Two or more offenses may be charged in the same indictment, information, or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
>
> . . . .
>
> (3) The court may order two or more indictments, informations, or complaints, or any combination thereof, to be tried together if the offense, and the defendants, if

there are more than one, could have been joined in a single indictment, information or complaint. The procedure shall be the same as if the prosecution were under such single indictment, information, or complaint.

If the offenses involved were of the same or similar character, they could be joined in one information and the trial court could order that they be tried together. *State v. Cole, ante* p. 1, 352 N.W.2d 154 (1984).

In all three robberies the same gun was described, a similar description of the man and some of the same articles of clothing—particularly black driving gloves—was made, and the same threats were said to have been used. Furthermore, in two of the robberies, references were made to calling a local disk jockey so that someone would know that persons were locked in a walk-in cooler.

Although not the "same," the offenses were similar in nature.

The defendant contends that he was prejudiced by the joinder because of the highly emotional character of the evidence as to the sexual assault during the Spaghetti Works robbery and the fact that such a charge did not exist in the Jerico's robberies. In *State v. Walker*, 200 Neb. 273, 263 N.W.2d 454 (1978), we found that the joinder was not prejudicial error where evidence relating to both offenses would have been admissible in a trial of either offense separately. In *Walker* the defendant was charged in an information with burglary with intent to commit rape and first degree sexual assault.

In the case at bar no sex-related offenses were charged in the Jerico's robberies. However, there was testimony that during the second Jerico's robbery, the defendant took a waitress aside, made advances toward her, and told her to "drop her drawers." Evidence of the completed crime in the Spaghetti Works case would have been admissible in the Jerico's cases to show method of operation and identity.

"The question of election between counts and the advisability of joint or separate trials is one directed to the sound discretion of the trial court . . . 'and unless some prejudice has resulted from the ruling of the court, it will not be

held that this discretion has been abused.' " *State v. Rodgers*, 186 Neb. 633, 635, 185 N.W.2d 448, 449 (1971) (quoting *Robinson v. State*, 107 Neb. 591, 186 N.W. 977 (1922)).

The defendant's final assignment of error is that the sentences imposed were excessive.

Within 6 months after arriving in Nebraska, the defendant committed a dozen felonies. The presentence report indicates that he is wanted in Arizona for parole violation (he has been convicted there on four counts of armed robbery); he is wanted in Kansas on charges including rape, sodomy, and kidnaping; and he is wanted in Colorado for questioning in connection with a missing person believed killed. It is apparent that the defendant is a violent and dangerous man and that a long period of incarceration is necessary for the protection of the public.

The defendant could have been sentenced to imprisonment for well over 400 years. In the absence of an abuse of discretion by the trial court, a sentence imposed within statutory limits will not be disturbed on appeal. *State v. Parks*, 212 Neb. 635, 324 N.W.2d 673 (1982). The sentences which were imposed are well within statutory limits. A review of the record and the presentence report discloses that the trial court did not abuse its discretion in sentencing.

There being no error, the judgment of the district court is affirmed.

AFFIRMED.

WHITE, J., concurs.

KRIVOSHA, C.J., concurring.

I concur in the results reached by the majority in this case. I write separately, however, because I believe that part of the rationale upon which the majority bases its decision is not correct. Specifically, I refer to that portion of the majority's opinion in which it states that "[e]vidence of the completed crime in the Spaghetti Works case would have been admissible in the Jerico's cases to show method of operation and identity." For reasons more particularly set out in my dissent in *State v. Ellis*, 208 Neb. 379, 303 N.W.2d 741 (1981), I do not believe that evidence of the sexual attack in the Spaghetti Works case could have been admissible to show either operation or identity in the

Jerico's robbery, and could only have been introduced by the State for the purpose of showing that McGuire acted in conformity with his character to commit a crime, contrary to the provisions of Neb. Rev. Stat. § 27-404(2) (Reissue 1979). I believe that we continue to improperly extend this rule to the point that we have virtually repealed the statute.