STATE OF NEBRASKA, APPELLEE, V. KENNETH N. THOMPSON,
APPELLANT.
438 N.W.2d 131

Filed April 7, 1989.   No. 88-303.

Thomas M. Kenney, Douglas County Public Defender, and Timothy P. Burns for appellant.

Kenneth N. Thompson, pro se.

Robert M. Spire, Attorney General, and Lynne R. Fritz for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is an appeal from the district court for Douglas County following convictions of two counts of robbery and two counts of using a weapon to commit a felony, and a determination that the appellant was a habitual criminal. The appellant was sentenced to a term of imprisonment of 15 years on each count, all sentences to be served consecutively. Counsel for appellant contends the district court erred in four respects: (1) in granting the State's motion to consolidate the two robbery charges and the two weapons charges, (2) in overruling the appellant's motion to suppress the fruits of the stop and arrest of the appellant on November 12, 1987, (3) in overruling the appellant's motion for a mistrial because the prosecutor used peremptory challenges to strike one of two black prospective jurors, and (4) in permitting police officers to testify regarding what photo or person was picked out of the pretrial photo array and physical lineup.

In pro se briefs filed with this court, the appellant alleges two additional errors on his behalf. First, the appellant alleges the pretrial identification procedures were unnecessarily suggestive, and, second, he alleges prosecutorial misconduct on the basis of references made by the prosecutor to "mug shots" in violation of the court's order to refrain from so referring. After a brief recitation of the relevant facts, we will address each of the above contentions.

At 10:40 p.m. on October 12, 1987, Herr's Gas 'N' Shop in Omaha, Nebraska, was robbed by a black male. Shawn

Claycomb was working alone that evening, doing stockwork in the back cooler area, when she was approached by a black male wearing a nylon stocking over his face. The assailant was armed with a sawed-off shotgun. Claycomb described her assailant as 6 feet 1 inch, 200 to 230 pounds, with short hair and medium-light skin.

On Wednesday, October 14, a Runza Hut drive-in located within four blocks from Herr's Gas 'N' Shop was robbed by two black males at approximately 7:50 p.m. At the time of the robbery, Renee Welch was working the front counter, and Daniel Flud, Sean Stevens, and Alex Adams were working the back kitchen, where a second cash register is located near the drive-up window. Welch observed two black males outside the restaurant. She watched them walk into the restaurant and went behind the counter to wait on them. When she looked up to take their order, she noticed that they were wearing nylon stocking masks over their heads. One of the assailants had a sawed-off shotgun and pointed it in her face. He ordered her to give him the money out of the front register. He then told her to lie down and went into the back kitchen area, where the second cash register was located. The shorter black male stayed up front and held a handgun on Welch. Flud, Stevens, and Adams were all ordered to get on the floor when the assailant armed with the sawed-off shotgun entered the kitchen area.

Two days after the robbery of Herr's Gas 'N' Shop, Ray Hunt, an Omaha police detective, came to Claycomb's apartment to show her a photo array of eight people. Claycomb chose a photograph of the appellant out of the array. Following the Runza Hut robbery on October 14, Omaha police detectives showed Welch, Stevens, and Adams the same photo array that had been shown to Claycomb after the robbery at Herr's Gas 'N' Shop. When shown the array, Welch chose the appellant, but stated that she could not be positive regarding her identification of the assailant. Stevens also chose the photo of the appellant, stating that the picture "resembled [the robber] a lot more." He also could not be positive about his identification. After looking at the same array, Adams stated that he was positive that the photo of the appellant he chose from the array was that of the assailant.

On November 12, Omaha Police Officer Edward Hale was on routine patrol in his police cruiser. In the nighttime hours Hale pulled over a brown Chevrolet Nova. Officer Hale testified during pretrial proceedings that he pulled over this vehicle in response to a call from the police dispatcher to go to the area of 48th and Sahler because a brown Chevrolet Nova was at that location acting in a suspicious manner. However, a review of the tape made by the chief of the Omaha Public Safety Communications Division of the dispatch for that evening discloses no reference to a brown Chevrolet Nova. Nonetheless, Officer Hale did stop a brown Chevrolet Nova on that date. Two people were in the car. The officer asked both the driver and the passenger for identification. The passenger did not have any identification and told the officer that his name was James Johnson and his date of birth was August 30, 1950. After not being able to verify the name with the date of birth, Hale recognized the passenger as a possible robbery suspect with an active warrant on file. Officer Hale told the appellant that he was going to take him to headquarters to run an identification check on him. At that time the appellant told the officer his real name, Kenneth Thompson.

To further support the prior photo identifications, the police conducted a physical lineup on November 13, consisting of the appellant and three other individuals with physical characteristics similar to the appellant's. At this lineup both Claycomb and Welch chose the appellant.

Prior to trial, the appellant filed a motion to suppress all evidence seized as a result of the November 12 stop and subsequent arrest of the appellant by Officer Hale. In his motion, the appellant alleged that the initial stop and detention were not based upon probable cause or a reasonable or articulable suspicion. This motion was overruled. Also prior to trial, the State made an oral motion for an order consolidating the two robbery informations, pursuant to Neb. Rev. Stat. § 29-2002 (Reissue 1985). The court granted the State's request over objection by the appellant. At trial, the State was allowed to present testimony of the officers present at the photo array and the lineup regarding the pretrial identification of the appellant. This testimony was accepted over hearsay objections

by the appellant. The appellant first assigns as error the consolidation of the two robbery and two weapons counts into one trial. Section 29-2002 provides:

(1) Two or more offenses may be charged in the same indictment, information, or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

. . . .

(3) The court may order two or more indictments, informations, or complaints, or any combination thereof, to be tried together if the offense, and the defendants, if there are more than one, could have been joined in a single indictment, information or complaint. The procedure shall be the same as if the prosecution were under such single indictment, information, or complaint.

(4) If it appears that a defendant or the state would be prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder of offenses in separate indictments, informations, or complaints for trial together, the court may order an election for separate trials of counts, indictments, informations, or complaints, grant a severance of defendants, or provide whatever other relief justice requires.

It is important to note that a trial court's ruling on a motion for consolidation of prosecutions properly joinable will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Vrtiska*, 225 Neb. 454, 406 N.W.2d 114 (1987). If the offenses involved were of the same or similar character, they can be joined in one information, and the trial court can order that they be tried together. *State v. McGuire*, 218 Neb. 511, 357 N.W.2d 192 (1984). In the present case, although the offenses were not joined in one information, the State made a proper motion to consolidate prior to trial.

In applying the statutory criteria for determining whether consolidation is proper, there are a number of similarities

between the two robberies in the instant case. The offenses occurred within 2 days and four blocks of each other. In both robberies a sawed-off shotgun was used, and although two men were involved in the Runza Hut robbery whereas only one was involved in the Herr's Gas 'N' Shop incident, the assailant with the sawed-off shotgun in both robberies was similarly described. A woman's nylon stocking mask was worn at both robberies. During both crimes, the assailant armed with the shotgun ordered the employees to the floor, at Herr's Gas 'N' Shop stating, "Get your white ass on the floor," and at the Runza Hut stating, "Get your fucking white ass down."

The appellant contends that he was prejudiced by the joinder, in contravention of § 29-2002(4). In *State v. Walker*, 200 Neb. 273, 263 N.W.2d 454 (1978), and *State v. McGuire, supra*, we found that joinder was not prejudicial error where evidence relating to both offenses would be admissible in a trial of either offense separately. Based on the reasoning of *Walker* and *McGuire*, evidence of either robbery would have been admissible at a separate trial of the other robbery to establish method of operation and identity. Therefore, the appellant was not prejudiced by the consolidation, and the trial court did not abuse its discretion in ordering the two informations consolidated for trial.

The appellant next assigns as error the overruling of his motion to suppress the fruits of the stop and subsequent arrest of the appellant on November 12, 1987. The appellant contends that the stop was illegal, in violation of the fourth amendment to the U.S. Constitution. Officer Hale testified that he received a radio broadcast of a suspicious car in a certain area. He proceeded to that area and pulled over a car containing the appellant. This stop, alleges the appellant, was an investigatory stop which must be justified by an objective manifestation that the person stopped has been, is, or is about to be involved in criminal activity. *State v. Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987). In *State v. Benson*, 198 Neb. 14, 251 N.W.2d 659 (1977), *cert. denied* 434 U.S. 833, 98 S. Ct. 117, 54 L. Ed. 2d 93, this court held that a reasonably founded suspicion to stop a vehicle *cannot* be based solely on the receipt by the stopping officer of a radio dispatch to stop the described vehicle without

any proof of the factual foundation for the relayed message. This holding was reiterated by this court in *State v. Beerbohm*, 229 Neb. 439, 427 N.W.2d 75 (1988). In *Beerbohm*, we upheld the stop, finding it appropriate because the officer observed evidence of improper operation of a vehicle with his own eyes. "It is noteworthy that [the officer] did not stop Beerbohm's automobile as soon as he located it, based solely upon the information relayed to him by radio." *Id.* at 444, 427 N.W.2d at 79.

There is nothing in the record of this case regarding specific observations by Officer Hale corroborating the characterization of the vehicle stopped as the vehicle identified as "suspicious" by the dispatcher. In fact, according to the affidavit of the chief of the Omaha Public Safety Communications Division, upon listening to the dispatch tape there is no evidence that Officer Hale was ever told to stop a brown Chevrolet Nova, directly contradicting his pretrial statements to that effect. It would therefore appear that this stop was not a legal one.

However, our characterization of this stop as illegal does not mean that the motion to suppress should have been granted. The appellant argues that both the postarrest lineup and the giving of a false name to Officer Hale should have been suppressed. We believe this contention is in error.

Evidence of the postarrest lineup was properly admitted. This lineup did not constitute "fruit" tainted by the initial illegal stop. When Officer Hale stopped the appellant, he recognized him as the subject of a current robbery warrant. This recognition constitutes an intervening circumstance sufficient to break the causal connection between the stop and the lineup. The connection between the illegal stop and the outstanding robbery warrant was so attenuated as to dissipate the taint of the illegal stop. The officer's actions after recognizing the appellant were based on a source completely independent of and unrelated to the radio dispatch preceding the stop. See *Brown v. Illinois*, 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975).

The Supreme Court of Colorado, in *People v. Hillyard*, 197 Colo. 83, 589 P.2d 939 (1979), was faced with a situation similar

to the facts at issue in the present case. In *Hillyard*, an officer stopped the defendant without a reasonable suspicion that he had committed any crime. After a computer check was undertaken by the officer, he discovered an outstanding U.S. Navy arrest warrant for the defendant. The officer arrested the defendant pursuant to the warrant, and en route to the station the defendant volunteered information about a burglary for which he was later convicted. The Colorado court held that the connection between the evidence regarding the burglary and the illegal stop was so attenuated as to dissipate the taint from the initial illegal stop. As stated by the court:

> The officer stopped the defendant without a reasonable suspicion that he had committed, or was about to commit, any crime. That, however, was the extent of his misconduct. He did not arrest upon such general suspicions. Rather, he acted because of the Navy's outstanding arrest warrant. . . . Once he knew of the warrant, the officer would have been derelict in his duty not to have arrested the defendant.

*Id.* at 85, 589 P.2d at 941. We believe that the logic employed by the Colorado court in the *Hillyard* case is equally applicable in this action. Therefore, the motion to suppress the postarrest lineup was properly denied.

Another question is presented with regard to the false information provided by the appellant to Officer Hale. Officer Hale directly asked the appellant his name after stopping the vehicle. The subsequent statement by the appellant was a clear and direct response flowing from the initial illegal stop. There was nothing to break the connection between the unlawful stop and the statement of the appellant's to dispel the taint of the stop from the false identification information. However, we hold the error committed by the district court in admitting Officer Hale's testimony regarding the appellant's false statement to be harmless beyond a reasonable doubt. Harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in a verdict adverse to a substantial right of the defendant. *State v. Watkins*, 227 Neb. 677, 419 N.W.2d 660 (1988). When the appellant told the officer his correct name, he

told the officer that he had misinformed him regarding his identity because of his belief that other warrants for traffic offenses were outstanding. The appellant's motive for misidentification was therefore sufficiently ambiguous that the probative value of this information was minimal. In addition, there was a significant amount of other evidence, including eyewitness testimony, implicating the appellant in these two robberies. On balance, we cannot say that the erroneous admission of the appellant's false information was error of a magnitude requiring reversal.

Next, the appellant contends the district court erred in overruling his motion for a mistrial because the prosecutor used a peremptory challenge to strike one of two black prospective jurors. The appellant in this case is a black male. Two of the 24 prospective jurors called to serve on the jury were black. The State used a peremptory challenge to strike only one of the two black prospective jurors; the other remained on the jury panel. In *State v. Rowe*, 228 Neb. 663, 423 N.W.2d 782 (1988), this court articulated the following rule applicable in cases alleging a discriminatory jury selection:

> Although a criminal defendant has no right to a petit jury composed in whole or in part of persons of her or his own race, *Strauder v. West Virginia*, 100 U.S. 303, 25 L. Ed. 664 (1879), the equal protection clause of U.S. Const. amend. XIV bars a prosecutor from challenging potential jurors "solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). . . . In order to make a prima facie case of discrimination in the selection of a jury, a criminal defendant must show that (1) she or he is a member of a cognizable racial group, (2) the prosecutor used peremptory challenges to remove members of the defendant's race from the venire, and (3) the facts and other relevant circumstances give rise to an inference that the prosecutor used those challenges to exclude potential jurors because of their race.

*Rowe, supra* at 667-68, 423 N.W.2d at 786.

Following a defense motion for mistrial, the trial court in the

present case asked the prosecutor to articulate his reasons for excluding one of the two black potential jurors. The prosecutor stated a number of nondiscriminatory factors. This court has held that the trial court's determination as to whether a defendant has established purposeful discrimination in the selection of a jury is a finding of fact which will not be reversed on appeal unless clearly erroneous. *State v. Rowe, supra.* The trial court's finding in this case was not clearly erroneous. The fact that a black male was left on the jury provides further support for finding that the jury selection was not racially discriminatory, and the defense motion for mistrial was properly denied.

The appellant also assigns as error the admission of testimony, over hearsay objection, regarding the pretrial identifications. These objections relate to three specific areas of testimony. First, James Reuting, a member of the robbery squad of the Omaha Police Division, stated that he showed a photo array to Welch and she chose a photo of the appellant. Also, robbery investigator Kenneth Bavasso testified that he showed Stevens the photo array and Stevens chose the appellant as well. Finally, Officer Melvin Berney testified that Claycomb viewed a lineup and picked out the appellant.

We need not decide whether the admission of this testimony was error. Where evidence is objected to which is substantially identical to evidence admitted and not objected to, prejudicial error will not lie because of its admission. *White v. Lovgren*, 222 Neb. 771, 387 N.W.2d 483 (1986). In the present case, although the testimony of the officers was objected to, each of the eyewitnesses also testified to the same pretrial identifications of the appellant. Because this identical evidence was admitted, the appellant was not harmed by the admission of the testimony to which he objected. The admission of this testimony was therefore harmless error beyond a reasonable doubt. *State v. Watkins*, 227 Neb. 677, 419 N.W.2d 660 (1988).

In his pro se briefs the appellant assigns additional errors. First of all, the appellant contends that the pretrial identification procedures utilized by the police were unnecessarily suggestive, and therefore the identifications made by several of the witnesses should have been suppressed. A review of the photo array and a photograph of the lineup

refutes this allegation. In addition, the record reveals that the photos were given to the witnesses in an unsuggestive manner and without comment. This court has held that whether identification procedures were unduly suggestive and conducive to a substantial likelihood of mistaken identification is determined by a consideration of the totality of the circumstances surrounding the procedures. *State v. Price*, 229 Neb. 448, 427 N.W.2d 81 (1988). In *State v. Richard*, 228 Neb. 872, 424 N.W.2d 859 (1988), we listed several factors to be considered in determining the likelihood of misidentification. These factors include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. A review of the facts in this case in light of the *Richard* standards evidences that the identification procedures were not unduly suggestive or likely to result in a misidentification.

The lineup objected to by the appellant was conducted with defense counsel present, and no suggestive procedures are evident. There are no apparent errors in the procedure utilized, and the subjects chosen to participate in the lineup are sufficiently physically similar to the appellant to dispel any claim of the appellant that he "stood out" among the group. Therefore, this assignment of error is without merit.

The appellant next alleges misconduct by the prosecution in referring to "mug shots" when questioning a witness, in violation of the trial court's order to refrain from so referring. The appellant contends that in examining Welch the reference made by the prosecutor to "mug shots" amounted to prosecutorial misconduct. The exchange, not objected to at trial, was as follows:

Q . . . [O]n the day of the robbery were you asked to come to Omaha Police Headquarters and take a look at some photographs of some people?

A Yes, I was.

. . . .

Q Do you remember how many photographs you

looked at that day?
A I looked at books and then at some little pictures.
Q Like mug books?
A Yeah.
Q So a lot of photographs?
A Yes.

Following this exchange, the witness was shown the photo array and indicated that she had seen those pictures at the station. This incidental reference does not amount to prosecutorial misconduct.

Because we find all of appellant's assignments of error to be without merit, the judgment and sentences of the district court are hereby affirmed.

AFFIRMED.